■ WESTCOM CORPORATION, Respondent, v GREATER NEW YORK MUTUAL INSURANCE COMPANY, Appellant, et al., Defendant. GREATER NEW YORK MUTUAL INSURANCE COMPANY, Third-Party Plaintiff-Respondent, v MANHATTAN MINI STORAGE, LLC, Third-Party Defendant-Appellant. [839 NYS2d 19]—

Order, Supreme Court, New York County (Harold B. Beeler, J.), entered January 30, 2006, which, insofar as appealed from, denied the motion by defendant Greater New York Mutual Insurance Company (GNY) for summary judgment dismissing the amended verified complaint as against it, and also denied the cross motion by third-party defendant Manhattan Mini Storage, LLC (MMS) for summary judgment dismissing the amended verified third-party complaint and the amended verified complaint as against it, unanimously modified, on the law, to grant the motion and cross motion to the extent of dismissing the amended verified complaint as against GNY, dismissing the fourth, fifth and sixth causes of action of the amended verified complaint as against MMS, dismissing the amended verified third-party complaint in its entirety as academic, and directing that plaintiff WestCom Corporation's potential recovery against MMS under the third cause of action of the amended verified complaint be limited to $7,500, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of GNY dismissing the amended verified complaint as against it, and in favor of MMS dismissing the amended verified third-party complaint.

In 2002, plaintiff WestCom Corporation, a telecommunications company, purchased a number of digital line interface cards (DLICs). WestCom stored the DLICs at a storage unit it leased in a storage facility operated by third-party defendant MMS. WestCom's storage unit was secured by a padlock that was opened with a key. WestCom owned the padlock and key, and, while the lease remained in effect, only WestCom's personnel were entitled to access to the storage unit's contents.

On February 4, 2003, a WestCom employee visited the storage unit and discovered that a key was broken off in the keyhole of the padlock securing the unit. At WestCom's request, MMS cut off the padlock. WestCom then purchased a new padlock from MMS and placed it on the unit.

On or about February 6, 2003, another WestCom employee went to the storage facility and, upon unlocking the unit, discovered that the DLICs were not there. The last time any WestCom employee remembered having noticed the DLICs in the storage unit was in December 2002.

After discovering that the DLICs were missing from the storage unit, WestCom filed a claim for the loss with its insurer, de-

fendant GNY, under WestCom's coverage for "direct physical loss of . . . Covered Property." GNY denied the claim on the ground that it fell under the policy's exclusion for "[p]roperty that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory."

After the denial of its insurance claim for the lost DLICs, WestCom commenced this action against GNY.[1] GNY commenced a third-party action against MMS to recover, as subrogee, any amount it might be required to pay WestCom. WestCom subsequently amended its complaint to assert various causes of action directly against MMS, although the caption of the action has not been changed to reflect the addition of MMS as a direct defendant. In the order appealed from, Supreme Court denied GNY's motion for summary judgment dismissing the amended complaint as against it and MMS's cross motion for summary judgment dismissing the amended complaint and the amended third-party complaint. We now modify to render summary judgment dismissing the amended complaint in its entirety as against GNY, the amended complaint in part as against MMS, and GNY's third-party complaint against MMS in its entirety.

Although "an insurer generally has the burden of proving that a loss is within the scope of a policy exclusion" (*Maurice Goldman & Sons v Hanover Ins. Co.*, 80 NY2d 986, 987 [1992]), the uncontroverted evidence in the record establishes, as a matter of law, that the claim here at issue falls within the policy exclusion invoked by the insurer, as was the case in *Maurice Goldman & Sons* (claim for unexplained loss of bag of jewelry during business trip held to fall within a similar but differently worded policy exclusion). Again, the relevant policy exclusion exempts from coverage any claim for "[p]roperty that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory." Aside from the fact that the subject loss was not discovered on a taking of inventory, the language of the exclusion precisely describes WestCom's claim.[2] The only evidence of the loss is a WestCom employee's testimony that he observed, upon opening the stor-

---

**1.** The action has been discontinued by stipulation as against the other named direct defendant, Masters Coverage Corporation.

**2.** We see no merit in WestCom's contention that the language "such as shortage disclosed on taking inventory" should be read as a limitation of the policy exclusion's scope. The use of the introductory phrase "such as" indicates unambiguously that the reference was intended as an example of a situation in which "there is no physical evidence to show what happened to [the property]," not to limit the scope of the exclusion to shortages discovered during the taking of inventory. After all, it would make no sense to exclude from coverage an unexplained loss discovered upon a formal taking of inven-

age unit on or about February 6, 2003, that the DLICs previously placed in that unit were "missing" from it. There is no evidence at all, much less any "physical" evidence, to show "what happened to" the DLICs.

The discovery on February 4 that the unit's padlock was jammed with a broken-off key does nothing to "show what happened to" the missing property. This is because the unit remained secured by the jammed padlock, which was cut off and replaced at WestCom's direction. Thus, even if it is assumed that the jammed padlock constituted "physical" evidence of an attempt by an unauthorized person to get into the unit, it did not constitute evidence that any such attempt succeeded.

WestCom's reliance on this Court's decision in *Moneta Dev. Corp. v Generali Ins. Co. of Trieste & Venice* (212 AD2d 428 [1995]) is unavailing. In *Moneta*, the claim was based on a statement by an officer of the insured "that, on March 3, 1988, he observed the subject property, which consisted of forklifts and other heavy equipment and which occupied approximately 6,000 square feet and weighed approximately 22 tons, and that, on March 9, 1988, he observed that most of the equipment was gone" (*id.* at 42:). Although the policy in *Moneta* contained the same exclusion at issue here, we denied summary judgment to the insurer on the ground that "the fact that *a very large amount of heavy equipment* disappeared in a short period of time creates a sufficient inference of theft to withstand summary judgment on the issue of whether the evidence 'show[s] what happened to [the property]' " (*id.* at 430 [emphasis added]). Indeed, citing *Maurice Goldman & Sons v Hanover Ins. Co. (supra)*, we specifically distinguished the situation presented in *Moneta* "from one in which *pieces of jewelry or other small items, easily subject to being misplaced or accidentally lost, disappear without explanation*" (212 AD2d at 430 [emphasis added]). Since the DLICs at issue here were small, easily transported items of personal property, this case is controlled by the Court of Appeals' decision in *Maurice Goldman & Sons*, not by *Moneta*.

We note that a federal Court of Appeals, in a case concerning coverage for lost laptop computers, distinguished *Moneta* on precisely the same ground we do here, holding that an identi-

tory while allowing coverage for an unexplained loss discovered in the course of other activities. We further note that WestCom's general counsel admits in his affidavit that WestCom never even entered the DLICs at issue on its inventory system. It is absurd for WestCom to suggest that, by failing to list these DLICs on its inventory records, it ensured that any loss of such equipment would be covered by the GNY policy.

cally worded policy exclusion precluded recovery where there was no evidence to explain what became of the missing laptops (*see C.T.S.C. Boston, Inc. v Continental Ins. Co.*, 25 Fed Appx 320, 326 n 4 [6th Cir 2001]). As the Sixth Circuit further opined in *C.T.S.C. Boston*, if testimony that property once in the insured's possession could no longer be found sufficed in every case to satisfy the requirement of "physical evidence to show what happened to the [property]," then "all missing property would be covered by the policy when there is no physical evidence of what happened to it, based on the 'missing property' exclusion itself" (*id.* at 325-326). This would render the exclusion self-cancelling and, hence, meaningless surplusage. Accordingly, we construe *Moneta*'s holding to be limited to cases involving the unexplained loss of heavy equipment or other massive items of personal property.

In view of the foregoing, the complaint must be dismissed as against GNY without regard to any of the other issues raised by the parties. Since GNY is being dismissed from the case, its third-party complaint against MMS must be dismissed as academic.

As previously noted, WestCom's amended complaint asserts a number of causes of action directly against MMS, and MMS has appealed from Supreme Court's denial of its cross motion for summary judgment dismissing the amended complaint as against it.[3] Turning to that aspect of the appeal, we modify to dismiss the complaint's fourth cause of action (for breach of contract), fifth cause of action (for breach of implied warranties) and sixth cause of action (for bailment liability) against MMS. Each of these causes of action is precluded by the express language of the self-service storage occupancy agreement between WestCom and MMS, dated February 14, 2002 (the Storage Agreement), which expressly provides that "Owner [MMS] is not supplying any security . . . or any other services," and that "[t]he relationship of Owner and Occupant [WestCom] created by this agreement is that of Owner and Occupant of a self-storage facility in accordance with Section 182 of the New York State Lien Law . . . and not that of bailee and bailor." As to WestCom's third cause of action (for negligence and gross negligence) against MMS, however, we find that MMS's submissions in support of its cross motion did not establish, as a matter of law, that MMS could not be held liable to WestCom under a negligence theory.

---

**3.** We construe the request in MMS's notice of cross motion for dismissal of "any cross-claims [*sic*] and counterclaims [*sic*] of plaintiff" to refer to the causes of action plaintiff asserts against MMS in the verified amended complaint.

Although we are not dismissing WestCom's third cause of action against MMS, the terms of the Storage Agreement require us to further modify to direct that WestCom's potential recovery under that claim be limited to $7,500. Under the Storage Agreement, WestCom agreed that it would not store more than $7,500 worth of property in its unit, and that MMS's "liability for damages relating to any loss or damage to [WestCom's] personal property caused by [MMS] . . . is limited to $7500." WestCom has not made any argument that MMS is not entitled to enforcement of these contractual provisions. Concur—Tom, J.P., Saxe, Friedman, Catterson and McGuire, JJ.