NATIONAL GRANGE MUTUAL IN-SURANCE COMPANY and The Main Street America Group, Defendant Below–Appellant,

v.

ELEGANT SLUMMING, INC., Plaintiff Below–Appellee.

No. 278, 2012.

Supreme Court of Delaware.

Submitted: Nov. 7, 2012.
Decided: Jan. 9, 2013.

Daniel P. Bennett, Esquire (argued) and Christian G. Heesters, Esquire of Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP, Wilmington, Delaware for Appellant.

Craig A. Karsnitz, Esquire (argued) and Erika R. Caesar, Esquire of Young Conaway Stargatt & Taylor, LLP, Georgetown, Delaware for Appellee.

Before HOLLAND, JACOBS, and RIDGELY, Justices.

RIDGELY, Justice:

Defendants–Below/Appellants, National Grange Mutual Insurance Company and The Main Street Insurance Group (collectively "NGM") appeal from a Superior Court grant of summary judgment in favor of Plaintiff-below/Appellee Elegant Slumming, Inc. ("Elegant Slumming") in this property insurance coverage dispute.

NGM raises two claims on appeal. NGM contends the trial court erred in

finding that the property insurance policy at issue requires only "some evidence," rather than "physical evidence," to show what happened to lost property. NGM also contends the trial court erred in finding the amount of Elegant Slumming's attorney's fees reasonable. We find that the trial court erred in concluding that testimonial evidence, by itself, fulfills the "physical evidence" requirement of the policy. After conducting a *de novo* review, we conclude that Elegant Slumming did present physical evidence in addition to testimonial evidence to show what happened to the lost property and therefore coverage is not barred by the policy exclusion. We also find no abuse of discretion in the award of attorney's fees pursuant to statute in this case. Accordingly, we affirm.

### Facts and Procedural History

Elegant Slumming is a jewelry store specializing in selling precious jewelry, gold, platinum, gemstones, fashion jewelry and costume jewelry, owned by Phillip Livingston. The store has three fulltime employees, one of whom is Benjamin Killebrew.

Merchandise would often arrive at the store via the mail. Such packages contained very valuable items, so would need to be signed for by one of the three full time employees. When received, the packages would be placed under what was called the "wrap desk." The packages would be opened later and the jewelry placed in a safe until they could be inventoried.

On the morning of June 24, 2010, Elegant Slumming received two packages. Delivery receipts signed by Killebrew indicate the packages contained jewelry worth $141,640. Killebrew placed the package under the wrap desk. Livingston remem-bers seeing the packages under the wrap desk on the day in question.

That day was a busy and stressful one for the employees of Elegant Slumming. Killebrew testified at his deposition he was particularly frustrated with the performance of a part-time employee. While closing up shop that afternoon, Killebrew began cleaning out trash located near the wrap desk.

Livingston realized two days later that the two packages for which he signed had not been inventoried. He then searched for the packages to no avail. Livingston called Killebrew, who initially stated he did not remember the packages, but offered to come into the store to assist in the search.

On his way to Elegant Slumming, Killebrew remembered his hasty disposal of the trash near the wrap desk. He made the connection, and it became clear to him that he had thrown away the packages by accident. Killebrew explained to Livingston that there were open and empty boxes right next to the wrap desk, and he threw away closed boxes along with the empty ones. Killebrew is "100%" sure he threw the two boxes away. The boxes have never been located.

Livingston submitted a claim to his property insurance carrier, NGM, which is a subsidiary of the Main Street America Group. The claim was denied. NGM denied the claim based on the following coverage exclusion in Elegant Slumming's insurance policy:

> We will not pay for loss or damage to property that is missing but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory.

Elegant Slumming brought suit in the Superior Court and the parties filed cross-motions for summary judgment. The trial court denied NGM's motion and granted

Elegant Slumming's motion, finding that the coverage limitation only "requires some evidence of what happened to the missing property." After further briefing and a hearing on damages, the trial court awarded Elegant Slumming $141,640 as payment for the lost jewelry, and attorneys' fees totaling $50,443.50, for a total judgment of $208,699.48. This appeal followed.

### There is Physical Evidence to Show What Happened to the Lost Property

■ NGM first claims the trial court erred in finding that the insurance policy requires only "some evidence," rather than "physical evidence," to show what happened to lost property. This Court reviews a Superior Court's grant of summary judgment *de novo* "to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law." [1] We also review judicial interpretations of insurance contracts *de novo.* [2]

■ The policy states "physical evidence" is required to "show what happened" to the lost property. We agree with NGM that the trial court erred in concluding that verbal testimony satisfies the physical evidence requirement. The

trial court found the testimonial evidence of Livingston and Killebrew, without more, sufficient to grant Elegant Slumming's motion for summary judgment because "the physical evidence requirement demands something more than nothing." [3]

■ Clear and unambiguous language in an insurance policy should be given its ordinary and usual meaning. [4] When the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities, and duties to which the parties had not assented. [5] To find that a requirement of "physical evidence" is satisfied exclusively by testimonial evidence would be contrary to the plain and ordinary meaning of the term. "Physical evidence" means any article, object, document, record or other thing of physical substance. [6] Accordingly, we hold that that testimonial evidence, by itself, is insufficient to constitute the "physical evidence" intended by the coverage exclusion.

Other jurisdictions also have recognized that testimonial evidence, in and of itself, is not sufficient to satisfy a "physical evidence" requirement. In *Westcom Corp. v. Greater New York Mut. Ins. Co.,* the New York Supreme Court, Appellate Division, considered the same policy limitation now

---

1. *State Farm Mut. Auto. Ins. Co. v. Patterson,* 7 A.3d 454, 456 (Del.2010) (*quoting Brown v. United Water Delaware, Inc.,* 3 A.3d 272, 275 (Del.2010)).

2. *Lank v. Moyed,* 909 A.2d 106, 108 (Del. 2006).

3. *Elegant Slumming, Inc. v. NGM Insurance Company,* C.A. No. S01C–11–013, slip op. at 14 (Del.Super. Nov. 30, 2011) (herein "Trial Op.").

4. *Rhone–Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del.1992).

5. *Id.* at 1195–96 (cite omitted).

6. *See e.g.* 11 *Del. C.* § 1274(3). For cases distinguishing physical evidence from testimonial evidence, *see Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

before us.[7] In *Westcom*, the insured kept property in a storage unit that was secured by a padlock.[8] The only evidence of the loss of property was the employee's testimony that, upon opening the storage unit, the property that was previously placed there was missing from it.[9] The court found that there was no evidence at all, "much less physical evidence," to show what happened to the missing property.[10]

The Sixth Circuit confronted a similar issue in *C.T.S.C. Boston, Inc. v. Continental Ins. Co.*[11] In *C.T.S.C. Boston*, the insured was in the business of providing computer education and its business property included laptops.[12] The insured submitted a claim for the loss of fifty-seven laptops that it found to be missing while taking inventory.[13] Its insurance policy also excluded coverage for loss of property "that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory."[14] The insured argued that its description of the laptops as "missing" was,

in effect, physical evidence of what happened to them.[15] The court rejected this argument, finding that under that interpretation "there would always be physical evidence of what happened to the missing property."[16] The court found that the insured "produced no physical evidence to show what happened to [the laptops]" and that its officers did not know when the property was taken or by whom, nor did the officers know what happened to the missing property.[17]

■ Our holding that testimonial evidence, by itself, does not constitute "physical evidence" does not end the analysis. NGM conceded at oral argument that the policy language at issue is an exclusion and that the burden is upon NGM to demonstrate that the policy exclusion applies in this case.[18] If the testimony of Livingston and Killebrew was the only evidence before the trial court, then NGM would have demonstrated that the exclusion applies. Here, Elegant also presented "physical ev-

7. *Westcom Corp. v. Greater New York Mut. Ins. Co.*, 41 A.D.3d 224, 839 N.Y.S.2d 19 (N.Y.App.Div.2007) (The policy exclusion provided, "Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory.").

8. *Westcom*, 41 A.D.3d at 226, 839 N.Y.S.2d 19.

9. *Id.*

10. *Id.* at 227, 839 N.Y.S.2d 19.

11. *Westcom*, 41 A.D.3d at 228, 839 N.Y.S.2d 19 (*citing C.T.S.C. Boston, Inc. v. Continental Ins. Co.*, 25 Fed.Appx. 320 (6th Cir.2001)).

12. *Boston*, 25 Fed.Appx. at 321.

13. *Id.*

14. *Id.* at 321.

15. *Id.* at 326.

16. *Id.* (internal quotes omitted).

17. *Id.* at 325.

18. Oral Argument at 38:15, *National Grange v. Elegant Slumming*, No. 278, 2012 (Del. Nov. 7, 2012) *available at* http:// courts.delaware.gov/supreme/audioargs.stm. *See HLTH Corp. v. Clarendon Nat. Ins. Co.*, 2009 WL 2849779, at *22 (Del.Super. Aug. 31, 2009) ("Under Delaware law, because the Plaintiffs have established ... that their loss is within the terms of the policies, Defendants, as insurers, bear the burden of establishing that the Prior Notice Exclusion bars coverage."). *See also Tenneco Automotive, Inc. v. El Paso Corp.*, 2004 WL 3217795, at *14 (Del.Ch. Aug. 26, 2004); *Deakyne v. Selective Ins. Co. of America*, 728 A.2d 569, 571 (Del.Super.1997); *E.I. duPont de Nemours & Co. v. Admiral Ins. Co.*, 1996 WL 111133, at *1 (Del.Super. Feb. 22, 1996); 17 *Couch on Ins.*3d § 254:12, (3rd Ed., 2012) ("The insurer bears the burden of proving the applicability of policy exclusions and limitations....").

idence"—as we have defined the term—by introducing the purchase order invoices, the shipping receipts for the jewelry, photographs of the wrap desk area where the jewelry packages were placed upon arrival and photographs showing the close proximity of the trash bins to this area. These items of physical evidence, together with the testimony explaining their relevance, show what happened to the property.[19]

### The Trial Court Did Not Abuse its Discretion in Awarding Attorney's Fees

 Turning to the award of attorney's fees, we start with the principle that under the American Rule, prevailing litigants bear the responsibility of paying their own attorney's fees.[20] Two categories of exceptions are fee-shifting statutes and equitable doctrines.[21] In this case it is undisputed that a fee-shifting statute applies. Title 18, Del. C. § 4102 provides that "[t]he court upon rendering judgment against any insurer upon any policy of property insurance, as "property" insurance is defined in § 904 of this title, shall allow the plaintiff a reasonable sum as attorney's fees to be taxed as part of the costs." We review an award of attorney's fees under an exception to the American Rule to determine if the trial court abused its discretion in awarding such fees.[22]

"When an act of judicial discretion is under review, the reviewing court may not substitute its own notions for what is right for those of the trial judge, if his judgment was based on conscience and reason, as opposed to capriciousness or arbitrariness."[23]

NGM argues the attorney's fees awarded were unreasonable because there was nothing novel about the case and an unreasonably high percentage of the total hours worked were billed by a partner. The trial judge found these arguments unpersuasive, as do we. The trial judge appropriately applied the factors enumerated by this Court in *General Motors Corp. v. Cox*.[24] The trial judge noted this was an issue of first impression that required significant work by both sides to fully present the arguments. We find no abuse of discretion in the amount of the award of attorney's fees to Elegant Slumming.

### Conclusion

The judgment of the Superior Court is **AFFIRMED.**

19. *See also Blasiar, Inc. v. Fireman's Fund Ins. Co.*, 76 Cal.App.4th 748, 90 Cal.Rptr.2d 374, 376–77 (Cal.App. 2nd, Div. 4, 1999) (finding activation of a burglar alarm, inaccurate inventory figures, and an employee's testimony that, during the relevant time, she noticed her office was 'out of order' although nothing was missing sufficient to satisfy the requirement of Physical evidence).

20. *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1044 (Del.1996).

21. *Id.*

22. *Dover Historical Soc., Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1088–89 (Del.2006) (*citing Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 210 (Del. 2005)).

23. *Chavin v. Cope*, 243 A.2d 694, 695 (Del. 1968) (*citing Pitts and Coker v. White*, 10 Terry 78, 109 A.2d 786 (Del.1954)).

24. *General Motors Corp. v. Cox*, 304 A.2d 55, 57 (Del.1973).