# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PFIZER INC., | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **C.A. No. N18C-01-310 PRW CCLD** |
| | ) | |
| U.S. SPECIALTY INSURANCE | ) | |
| COMPANY, | ) | |
| **Defendant.** | ) | |

Submitted: June 9, 2020
Decided: August 28, 2020
Opinion and Order Reissued:  September 1, 2020*

## MEMORANDUM OPINION AND ORDER

*Upon Plaintiff Pfizer Inc.'s Motion for Summary Judgment,*
**GRANTED**.

*Upon Defendant U.S. Specialty Insurance Co.'s Motion for Summary Judgment,*
**DENIED**.

Kenneth J. Nachbar, Esquire, John P. DiTomo, Esquire, Barnaby Grzaslewicz, Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, Robin L. Cohen, Esquire, Adam S. Ziffer, Esquire, Marc T. Ladd, Esquire, MCKOOL SMITH, P.C., New York, New York, *Attorneys for Plaintiff Pfizer Inc*.

Carmella P. Keener, Esquire, COOCH & TAYLOR, P.A., Wilmington, Delaware, Jeffrey J. Ward, Esquire, DYKEMA GOSSETT PLLC, Washington, D.C., *Attorneys for Defendant U.S. Specialty Insurance Company*.

**WALLACE, J.**
_____

\* Due to a circumstance internal to the Court, this memorandum opinion and order was placed on its public website on August 28, 2020, but not actually docketed.  The Court has reissued and docketed its memorandum opinion and order this date to ensure that any Courts' rules deadlines begin to accrue on September 1, 2020.  There is no other change to that issued on August 28, 2020.  And the Court apologizes to the parties for any inconvenience this oversight has created.

In this insurance coverage dispute Pfizer Inc. seeks to recover against U.S. Specialty Insurance Company under an excess directors' and officers' insurance policy ("D&O Policy").[1] According to Pfizer, the D&O Policy obligates U.S. Specialty to pay for costs Pfizer incurred defending and settling a securities litigation suit ("*Morabito* Action").[2] The parties previously litigated cross-motions for partial summary judgment on another issue on which Pfizer prevailed.[3] In this second round of motions, U.S. Specialty[4] and Pfizer[5] each seek complete rather than partial disposition of the case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts salient now are mostly the same as those for the previous cross-motions. So the Court recounts the relevant portions of that undisputed factual record here, supplemented by any new and undisputed factual bases pertinent to these cross-motions.

---

[1] Compl. ¶ 1 (Jan. 26, 2018) (D.I. 1).

[2] *Id.* That action became *In Re Pfizer Inc. Securities Litigation*, No. 1:04-civ-9866 (HBP) (S.D.N.Y) after consolidation with other suits.

[3] *Pfizer Inc. v. Arch Ins. Co.*, 2019 WL 3306043, at *10 (Del. Super. Ct. Jul. 23, 2019) (*Pfizer I*).

[4] D.I. 121.

[5] D.I. 117.

Pfizer is a New York-based Delaware corporation, while U.S. Specialty is headquartered and formed in Texas.[6] U.S. Specialty issued the D&O policy insuring against allegations of wrongful acts of Pfizer's directors and officers on a claims-made basis for the period April 16, 2004, to April 16, 2005.[7] U.S. Specialty's policy is an excess policy, one part of a thirteen-insurer tower, each excess insurer following the form of the primary insurer.[8]

The D&O Policy contained specific exclusions for claims "arising out of, based upon or attributable to," or sharing "as a common nexus any fact, circumstance, situation, event, transaction [or] cause" with *Robert L. Garber v. Pharmacia Corp., et. al.*, No.03-1519 (AET) (D.N.J.) ("*Garber* Action"), or for which the claim grew out of a Related Wrongful Act to a number of other suits ("Personal Injury Actions").[9]

The *Garber* Action alleged that Pfizer, as successor to Pharmacia Corporation, made misrepresentations and concealed from investors the adverse gastrointestinal health effects of one of its highly profitable anti-inflammatory drugs

---

[6]  *Pfizer I* at *2.

[7]  *Id.*

[8]  *Id.*

[9]  *Id.* at *1.

Celebrex in violation of securities law.[10] The Personal Injury Actions were class actions alleging personal injuries from Celebrex and another of Pfizer's drugs.[11] The *Morabito* Action, like *Garber*, alleged misrepresentations and concealment from investors, but related to the *cardiovascular* health risks associated with Celebrex and yet a third of Pfizer's anti-inflammatory drugs.[12]

In the earlier cross-motions, the Court determined that Delaware law applied to the D&O Policy, and required a showing that *Morabito* was "fundamentally identical" to the earlier suits for the exclusion to apply.[13] The Court reasoned that, because *Morabito* alleged Pfizer's concealment of cardiovascular risks associated with its drugs while *Garber* concerned Pfizer's concealment of gastrointestinal risks, they were "in all relevant respects, different" and therefore not excluded.[14] U.S. Specialty's codefendant, Arch Insurance Company, subsequently settled with Pfizer.[15]

---

[10]  *Id*. at *3.

[11]  *Id*.

[12]  *Id*.

[13]  *Id.* at *9 n.82.

[14]  *Id*. at *10.

[15]  D.I. 116.

The D&O Policy, as an excess policy, incorporates the terms from the tower's underlying policies, including two prior notice exclusions ("Prior Notice Clauses"). The wording of these exclusions is not disputed, and in relevant part they bar indemnification for losses:

> "directly or indirectly[] based on, attributable to, arising out of, resulting from, or in any matter relating to wrongful acts or any facts, circumstances or situations of which notice of claim or occurrence which could give rise to a claim has been given prior to the effective date of this policy under any other policy or policies"

or

> "alleging, arising out of, based upon, or attributable to the facts alleged or to the same or related Wrongful Acts alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement. . . ."[16]

Likewise, the parties agree that the D&O Policy specifies that it "shall attach only after all Underlying Insurance has been exhausted by actual payment of claims or losses thereunder" ("Exhaustion Clause").[17]

On April 15, 2003, Pfizer gave notice of the *Garber* Action, and another case, *George Jewell, et al. v. Pharmacia Corp.*, et al., No. 03-cv-1691-AET (D.N.J.)

---

[16]   U.S. Specialty Op. Br. at 9–10 (D.I. 122); Pfizer Op. Br. at 6–7 (D.I. 118).

[17]   Transmittal Decl. of Jeffrey J. Ward ex. 7 at 13 (D.I. 122).

("*Jewell* Action") to its then-current insurers by letter.[18]  Though Pfizer was not a

defendant in the *Garber* and *Jewell* Actions, the letter gave notice of "facts and

circumstances that may subsequently give rise to a claim in connection with" those

suits.[19]  The *Morabito* Action commenced in December 2004.[20]

## II.  LEGAL STANDARD

The Court may grant a motion for summary judgment when: "(1) the record

establishes that, viewing the facts in the light most favorable to the nonmoving party,

there is no genuine issue of material fact, and (2) in light of the relevant law and

those facts, the moving party is legally entitled to judgment."[21]  The Court may not

grant a motion for summary judgment "[i]f . . . the record reveals that material facts

are in dispute"[22] but if the sole disagreements remaining in the case are issues of law

and a trial to weigh disputed facts is unnecessary, a matter should be disposed of by

---

[18]  Transmittal Decl. of Jeffrey J. Ward ex 3 at 1 (D.I. 122).

[19]  *Id.*

[20]  Compl. ¶ 25 (D.I. 1).

[21]  *Haft v. Haft*, 671 A.2d 413, 414–15 (Del. Ch. 1995) (citing *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991)).  *See also Brooke v. Elihu-Evans*, 1996 WL 659491, at *2 (Del. 1996) ("If the Court finds that no genuine issues of material fact exist, and the moving party has demonstrated his entitlement to judgment as a matter of law, then summary judgment is appropriate.").

[22]  *CNH Indus. Am. LLC v. Am. Cas. Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. Ct. June 8, 2015).

summary judgment.[23] Where, as here, neither party argues the existence of a genuine issue of material fact in a set of cross-motions for summary judgment, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[24]

Pfizer and U.S. Specialty agree that their motions present two legal questions for the Court to decide: (1) does the D&O Policy attach when another insurer lower than U.S. Specialty in a tower settled with Pfizer for less than its policy limit and (2) do the D&O Policies' exclusions preclude coverage for the *Morabito* Action?

## III. DISCUSSION

The insured bears the initial burden of showing that the alleged loss is within the coverage provisions of the insurance policy.[25] The burden "falls on the insurer to prove the elements of a policy exclusion."[26] And "an exclusion clause in an insurance contract is construed strictly to give the interpretation most beneficial

---

[23] *Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999). *See also Davis v. University of Del.*, 240 A.2d 583, 584 (Del. 1968) ("The disposition of litigation by motion for summary judgment should, when possible, be encouraged for it should result in a prompt, expeditious and economical ending of lawsuits.").

[24] Del. Super. Ct. Civ. R. 56(h).

[25] *Deakyne v. Selective Ins. Co. of Am.*, 728 A.2d 569, 571 (Del. Super. Ct. 1997).

[26] *E.I. DuPont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 53 (Del. Super. Ct. 1995); *National Grange Mut. Ins. Co. v. Elegant Slumming, Inc.*, 59 A.3d 928, 932 n.18 (Del. 2013) (collecting cases).

to the insured."[27]  In support of its own motion and in opposition to Pfizer's, U.S. Specialty relies solely on the Exhaustion Clause and Prior Notice Clauses.

## A. THE D&O POLICY ATTACHES DESPITE THE EXHAUSTION CLAUSE

As to the Exhaustion Clause, the issue is whether a settlement between an insured and an insurer in satisfaction of a policy but for less than the policy limit affects attachment of excess insurers higher in a tower.

As the Court noted earlier in this litigation:  Under circumstances such as these, "[e]xcess coverage is triggered when the underlying policy limit is reached by the total costs incurred by the insured, regardless of whether the total payments to the insured by the underlying insurers reach those limits."[28]  U.S. Specialty invokes certain other jurisdictions' authorities embracing a contrary rule that  would deny attachment.[29]

Delaware courts have held fast to a principle (the "*Stargatt* Rule") that excess policies attach irrespective of "whether the insured *collected* the full amount of the primary policies, so long as [the excess insurer] was only called upon to pay such

---

[27] *Sun-Times Media Grp., Inc. v. Royal and Sunalliance Ins. Co. of Canada*, 2007 WL 1811265, at *11 (Del. Super. Ct. June 20, 2007).

[28] Hrg. Tr. Dec. 16, 2019 at 7 (D.I. 114) (citing *HLTH Corp. v. Agric. Excess & Surplus Ins. Co.*, 2008 WL 3413327 (Del. Super. Ct. Jul. 31, 2008)).

[29] U.S. Specialty points particularly to *Forest Laboratories, Inc. v. Arch Ins. Co.*, 953 N.Y.S.2d 460 (N.Y. Sup. Ct. 2010), *aff'd*, 984 N.Y.S.2d 361 (N.Y. App. Div. 2014).

portion of the loss as was in excess of the limits of those policies."[30] California

embraces the contrary proposition (the "*Qualcomm* Rule"), where underlying policy

settlements below limits bar attachment above when the excess policy requires

"exhaust[ion] by actual payment of a covered loss."[31]

Delaware consistently follows the *Stargatt* rule, construing a settlement in

satisfaction of a policy as an exhaustion of that policy,[32] at least in the absence of an

explicit provision to the contrary.[33]  And when doing so, this Court has had occasion

to explicitly identify and reject the approach taken in the California case establishing

the *Qualcomm* Rule as "contrary to the established case law" of Delaware.[34]

*Stargatt*—constrained by judicial modesty as a federal court applying state

law against making broad pronouncements not necessary to decide the case before

it—allowed for the possibility a policy might create a no-settlement-below

---

[30]  *Stargatt v. Fidelity and Cas. Co. of New York,* 67 F.R.D. 689, 691 (D. Del. 1975) (quoting *Zeig v. Massachusetts Bonding & Ins. Co.*, 23 F.2d 665 (2d Cir. 1928)) (italics in original).

[31]  *Qualcomm, Inc. v. Certain Underwriters At Lloyd's, London*, 161 Cal.App.4th 184, 73 Cal.Rptr.3d 770 (2008).

[32]  *Mills Ltd. Partnership v. Liberty Mut. Ins. Co.*, 2010 WL 8250837, at *6-9 (Del. Super. Ct. Nov. 5, 2010), *rearg. denied*, 2010 WL 8250848 (Del. Super. Ct. Nov. 23, 2010), *appeal refused,* 2011 WL 66015 (Del. Jan. 10, 2011); *HLTH Corp.*, 2008 WL 3413327, at *14–15.

[33]  *Tenneco Auto. Inc. v. El Paso Corp.*, 2001 WL 1641744, at *9 (Del. Ch. Nov. 29, 2001).

[34]  *HLTH Corp.*, 2008 WL 3413327, at *14–15.

requirement via an express clause.[35]  But the D&O Policy here contains no such clause.  The Exhaustion Clause requires only that the underlying policies be "exhausted by actual payment of claims."  A settlement in which an insurer makes a payment and the insured agrees that the payment fully satisfies the policy accomplishes just such an exhaustion through actual payment.[36]

That said, no matter the strained read of the Exhaustion Clause U.S. Specialty suggests[37] there is strong suggestion in our law that Delaware embraces the *Stargatt* Rule absolutely even in the face of an explicitly contrary clause.  For instance this Court has previously held that even when a policy required exhaustion "by reason of the insurers of the Underlying Policies paying or being held liable to pay in legal currency the full amount of the Underlying Limit of Liability as loss,"[38] the *Stargatt* Rule applied and commanded attachment.[39]

Simply put, Delaware recognizes no business reason for an excess insurer to

---

[35]  *See Stargatt*, 67 F.R.D. at 691.

[36]  *See Massachusetts Mut. Life Ins. Co. v. Certain Underwriters at Lloyds of London*, 2014 WL 3707989, at *6 (Del. Super. Ct. June 6, 2014) (finding "exhausted by the actual payment of loss(es)" ambiguous and so requiring attachment) (citing *Ali v. Federal Ins. Co.*, 719 F.3d 83, 91 (2d Cir. 2013)).

[37]  And remaining mindful that no insurer-favored, strained read of any exclusion clause should ever be entertained.  *Sun-Times Media Grp.*, 2007 WL 1811265, at *11.

[38]  *Mills Ltd. P'ship.*, 2010 WL 8250837, at *2.

[39]  *Id.* at *9 (Del. Super. Ct. Nov. 5, 2010).

care whether the payment in satisfaction of a policy below was for the policy's full dollar value, so long as the protections afforded by all underlying insurance policies are extinguished and the excess insurer's liability begins only at its own attachment point.[40] An excess carrier cannot avoid coverage under an exhaustion clause due to a settlement below unless that settlement works some additional exposure or prejudice on the excess carrier above the attachment point.[41]

## B. THE PRIOR NOTICE CLAUSES DO NOT EXCLUDE THE MORABITO SUIT.

U.S. Specialty's invocation of the Prior Notice Clauses flows from Pfizer's April 15, 2003 letter to its then-current insurers of the *Garber* Action and *Jewell* Action. To prevail, U.S. Specialty must show that one or the other of the Prior Notice Clauses is satisfied. This requires showing either that the *Morabito* Action is "based on, attributable to, arising out of, resulting from, or in any matter relating to wrongful acts or any facts, circumstances or situations" or "alleging, arising out

---

[40] *Id.* (citing *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 445 (Del. 2005)).

[41] *Dunlap*, 878 A.2d at 444. In *Dunlap*, an innocent car passenger suffered catastrophic injuries in a crash with a bus. *Id.* at 437. The driver's policy paid its coverage limit, and the bus's insurer offered a settlement below its limit. *Id.* The driver's insurer took the position that such a settlement would fail to exhaust the bus's policy, and thus prevent attachment of the underinsured motorist coverage in the driver's policy. *Id.* at 437–38. As a result, the passenger was forced to refuse settlement, went to trial against the bus and lost, after which the driver's underinsured coverage attached to its own full limit anyway. *Id.* at 438. The Court found that those facts stated a claim for breach of the implied covenant of good faith for which the injury was loss of the settlement offer and all trial expenses. *Id.* at 444–45. "[A] insurer may not rely on an exhaustion provision absent a realistic risk of prejudice." *Id.* at 445. This rule applies with equal force to exhaustion clauses in excess insurance policies. *Mills Ltd. P'ship*, 2010 WL 8250837 at *9.

of, based upon, or attributable to the facts alleged or to the same or related Wrongful Acts alleged" in *Garber* or *Jewell*.

This inquiry is almost identical to that of the prior cross-motions, where, as the Court explained, "[t]he exclusions at issue in this case are triggered by a claim 'arising out of, based upon or attributable to' either the *Garber* Action itself or any Wrongful Act or Interrelated Wrongful Acts alleged in the *Garber* Action."[42] The Court has already found that "the *Garber* Action and *Morabito* Action do not cover the same subject."[43]

That finding is controlling. Whether the *Morabito* Action was "resulting from, or in any matter relating" to the *Garber* Action is in all respects the same inquiry as "arising out of" or "based upon" and still requires a showing that the actions are "fundamentally identical."[44] The distinction the Court identified in the previous round of cross-motions between concealment of cardiovascular health risks

---

[42] *Pfizer I* at *9.

[43] *Id*. at *10.

[44] *See Med. Depot, Inc. v. RSUI Indemnity Co.*, 2016 WL 5539879, at *13 (Del. Super. Ct. Sept. 29, 2016) (requiring fundamental identity where policy exclusion language connecting events was "based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events").

and concealment of gastrointestinal health risks dooms U.S. Specialty's current effort to avoid coverage.[45]

The only other minor departure this motion takes from the prior cross-motions is reliance on the April 2003 letter's mention of the *Jewell* Action specifically. The *Jewell* Action was one of a number of suits consolidated into the *Garber* Action.[46] The Court's prior ruling did not separately examine *Jewell*. But the *Jewell* Action followed the same litigation trajectory as the *Garber* Action, and so the Court's earlier finding that *Garber* Action litigation is distinct from the *Morabito* Action controls.

A more exacting review of the *Jewell* Complaint[47] yields no different result. Just as in *Garber*, the *Jewell* plaintiff relates Pharmacia and Pfizer promoting Celebrex as a non-steroidal anti-inflammatory drug with fewer gastrointestinal risks than ordinary aspirin.[48] *Jewell* identified the same actionable misrepresentation and concealment—manipulating the CLASS study to create the illusion of reduced

---

[45] *See Pfizer I* at *3 ("The *Morabito* Action alleged that Pfizer and the individual defendants made false representations and omissions regarding the **cardiovascular risks** associated with Celebrex and Bextra, whereas the *Garber* Action alleged that Pharmacia and its co-marketer Pfizer made false and misleading statements regarding the **gastrointestinal health risks** of Celebrex.") (emphasis in the original).

[46] Transmittal Aff. of Barnaby Grzaslewicz ex. 5 (D.I. 119).

[47] Transmittal Decl. of Jeffrey J. Ward ex. 2 (D.I. 122).

[48] *Id*. at ¶ 25.

gastrointestinal risks by only looking at the first six months of data—as the *Garber* Action to support a claim that "Celebrex was safer for the stomach and digestive tract than conventional drugs" [49] *Jewell* relates recent news of possible cardiovascular risks as a speculative danger researchers discovered two years after the drugs came on the market.[50] The same allegations are discussed in the *Garber* Complaint in the same manner.[51] And just like *Garber*, *Jewell* makes no allegation of fraudulent misrepresentations or concealment of the cardiovascular risks of Pfizer's anti-inflammatory drugs.

## V. CONCLUSION

Pfizer's April 2003 letter to its then-insurers warning of possible future litigation related to its products' gastrointestinal risks does not exclude from coverage claims relating to its products' cardiovascular risks. And, in Delaware, an excess insurance policy attaches when a covered loss exceeds its attachment point after accounting for all underlying policies. Thus, any settlement between Pfizer

---

[49] *Id*. at ¶¶ 26, 29 46.

[50] *See id*. at ¶ 48 (citing to a newspaper article in which researchers at the Cleveland Clinic concluded that data on Celebrex and Vioxx was concerning enough to require "a trial specifically assessing cardiovascular risk and benefit" of the drugs).

[51] *See* Transmittal Decl. of Jeffrey J. Ward ex. 1 ¶ 16 (citing and quoting the same newspaper article) (D.I. 122).

and its other insurers is immaterial to the Exhaustion Clause, and neither Prior Notice Clause works an exclusion.

Pfizer's Motion for Summary Judgment is **GRANTED;** U.S. Specialty's Cross-Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*

**Paul R. Wallace, Judge**