[No. B124055. Second Dist., Div. Four. Aug. 25, 1999.]

BLASIAR, INC., Plaintiff and Appellant, v.
FIREMAN'S FUND INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Smith, Arnold & Gyben, Douglas P. Smith and William A. Elliott for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, John E. Feeley and Tae J. Im for Defendant and Respondent.

**OPINION**

**KUHL, J.\***—Blasiar, Inc., doing business as Alert Communications (Alert) made a claim against an insurance policy issued by Fireman's Fund Insurance Company (Fireman's Fund) for property that Alert believed had been stolen from its warehouse. Fireman's Fund denied the claim, citing an exclusion for "[p]roperty that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory."

Alert brought an action against Fireman's Fund for breach of contract and declaratory relief, arguing that the exclusion is ambiguous and that Alert had presented evidence tending to show that the missing inventory had been stolen. After a court trial, the trial judge concluded that the exclusion is not ambiguous and held that, on the facts presented, Alert's loss was not covered. The trial court therefore entered judgment for Fireman's Fund. We agree that the exclusion is not ambiguous and further hold that the trial court's ruling finding no coverage for the loss is supported by substantial evidence. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Alert installs telephone systems for business customers. Alert maintained a warehouse and some offices at 1224 East Main Street in Alhambra, California. The inventory stored in the warehouse included telephone instruments, printed circuit boards and microprocessors.

Alert was insured for certain losses under a portfolio policy (Policy) with Fireman's Fund. Alert's inventory at the warehouse location on Main Street in Alhambra was covered property under the terms of the Policy.

---

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

On January 23, 1996, about 9:56 p.m., Alert's manager, Terri Goldman, received a telephone call notifying her that the burglar alarm for the Main Street warehouse was sounding. Goldman went to the warehouse accompanied by another Alert employee. They did not observe any signs of unauthorized entry nor did they see any evidence suggesting theft of stock or other property. They reset the burglar alarm and left. Around this time Alert had problems with rodents setting off false alarms in the warehouse.

On January 24, 1996, the Alert general manager wrote a memorandum referring to a "strange scenario" regarding certain inventory. The memorandum states that "[a]pparently our stock levels are not adding up to our perpetual [inventory] numbers in PhoneBiz. I am not certain what this means yet. I'm not sure if we have experienced a theft or if we have some kind of accounting error." The memorandum indicated that the matter would be further analyzed as part of the quarterly physical inventory scheduled for February 1, 1996.

On January 29, 1996, Dyan Ortbal returned to her office at Alert after the weekend. She noticed that files had been knocked off her desk and onto the floor and that they had not been picked up. Her office had not been in that condition when she had left the preceding Friday. Ortbal's office was located next to the warehouse. Ortbal did not notice anything missing from her office and she did not notice any sign of forced entry into her office by a window or door. Ortbal looked at the inventory in the warehouse and did not notice anything missing. However she testified that she could not have determined whether inventory was missing just by looking at it because of the way the inventory was stacked. No one except Ortbal's superiors had permission to go into her office over the weekend.

Alert conducted a physical inventory count on about January 31, 1996. By comparing the results of the physical inventory count with the company's perpetual inventory records, Alert determined that it had an inventory shortage valued at $92,311. The company's perpetual inventory was based on computer records of items received and sold.

Alert did not report the events of January 24 or 29 or the January 31 inventory shortage to the police or to Fireman's Fund at the time these events occurred.

Subsequent to January 31, 1996, Alert experienced thefts of inventory from the warehouse, believed to have occurred between February 14 and March 4, 1996. The thefts were discovered because an air-conditioning unit

in a window at the insured premises was noted to have been pushed into the warehouse and the window was broken. The air-conditioning unit that was used as the point of entry was in Ortbal's office.

About March 5, 1996, Alert reported three claims to Fireman's Fund. Two claims concerned the thefts believed to have occurred between February 14 and March 4, 1996. One claim was for the $92,311 loss discovered in the January 31 inventory.

After meeting with Alert and investigating the claims, Fireman's Fund paid Alert $83,523.87 for the thefts of inventory believed to have occurred at the insured premises between February 14 and March 4, 1996. Fireman's Fund denied coverage for the $92,311 claim for losses occurring prior to February 4, 1996.

Fireman Fund's denial was based on the Policy's "mysterious disappearance exclusion" which provides: "1. We will not pay for loss of or damage to; . . . (d). Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory."

Alert brought this action seeking a declaration that the Policy covers the $92,311 loss and alleging a cause of action for breach of contract. The case was tried to the court largely on stipulated facts. The trial court rejected Alert's contention that the Policy exclusion in question is ambiguous and ruled for Fireman's Fund on the ground that there was no physical evidence to show what happened to the $92,311 in missing inventory.

Alert filed a timely notice of appeal.

## DISCUSSION

■ Alert's first contention is that the mysterious disappearance exclusion of the Policy is ambiguous. ■ On this issue the trial court's determination is subject to de novo review. "[I]nterpretation of an insurance policy is a question of law." (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

■ Insurance contracts, like all contracts, are interpreted to give effect to the mutual intention of the parties, which, if possible, is inferred solely from the written provisions of the contract. (11 Cal.4th at p. 18.) In this case no party offered any extrinsic evidence bearing on contract interpretation. Therefore the language of the insurance contract should be interpreted

according to the common and ordinary meaning of the words of the contract. "The 'clear and explicit' meaning of [the written provisions of a contract], interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation. [Citation.]" (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

■ "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. [Citation.] Courts will not strain to create an ambiguity where none exists. [Citation.]" (*Waller* v. *Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at pp. 18-19.) When a policy limitation is at issue, the language of the limitation must be plain and clear. (*Feurzeig* v. *Insurance Co. of the West* (1997) 59 Cal.App.4th 1276, 1283 [69 Cal.Rptr.2d 629].)

■ Alert argues that the Policy's mysterious disappearance exclusion is ambiguous in four respects. First, Alert argues that the term "physical evidence" is ambiguous. According to Alert, the meaning of the term is indeterminate because it is not defined by the Policy or by case law.

We agree with Alert that the words of an exclusion must be part of the working vocabulary of the average person, and must be phrased in a logical manner. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 1998) ¶ 4:150, p. 4-31.) But the words "physical" and "evidence" are not technical terms outside of common usage. The Oxford English Dictionary defines "evidence" as "[a]n appearance from which inferences may be drawn; an indication, mark, sign, token, trace" and as "[g]round for belief; testimony or facts tending to prove or disprove any conclusion." The same reference source defines "physical" as "[o]f or pertaining to material nature, or to the phenomenal universe perceived by the senses; pertaining to or connected with matter; material." (3 Oxford English Dict. (1933) pp. 346-347, 806.) One way of restating the common understanding of the phrase "physical evidence" is "tangible facts or circumstances." The phrase is not inherently ambiguous.

Alert complains that the Policy contains no definition of "physical evidence." ■ But "[t]he absence from the policy of a definition of [a] term . . . does not *by itself* render the term ambiguous. . . . Indeed, any rule that rigidly presumed ambiguity from the absence of a definition would be illogical and unworkable." (*Bay Cities Paving & Grading, Inc.* v. *Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 866 [21 Cal.Rptr.2d 691, 855 P.2d

1263], italics in original.) Under some circumstances, the absence of a definition could be a factor to consider in determining whether a term is ambiguous; for example, where the words in question do not have a generally accepted meaning or where a technical term is used. (*Id.* at p. 867.) Here, however, a policy definition only would have served to restate nontechnical, generally understandable terms by using other words. The absence of a policy definition does not make the words "physical evidence" ambiguous.

Nor is the absence of case law interpreting the policy language an indication of ambiguity. If it were necessary for policy language to be interpreted in a published court opinion before it could be considered unambiguous, the first case to consider any particular policy language always would hold that the previously uninterpreted language was ambiguous. Obviously this would be an absurd result.

Alert offers an example that purportedly demonstrates why the term "physical evidence" is ambiguous. Alert hypothesizes a scenario in which a percipient witness watches a burglar enter an insured's building and leave carrying property. The burglar does not leave fingerprints, footprints or signs of forced entry. Because the Policy uses the term "physical evidence," Alert contends that the exclusion might apply even though a witness can testify about the burglary. The answer to Alert's hypothetical really is not in doubt. Just as Ortbal's testimony about the condition of her office is testimony about physical evidence, testimony about the physical movements of a burglar into and out of a building and about the carrying of property would be testimony about physical evidence of theft. Fireman's Fund agrees with this construction.

But even if the answer to Alert's hypothetical were in doubt, this would not create an ambiguity that would affect application of the exclusion in this case. " '[L]anguage in a contract must be construed . . . in the circumstances of that case, and cannot be found to be ambiguous in the abstract.' [Citation.] 'There cannot be an ambiguity per se, i.e. an ambiguity unrelated to an application.' [Citation.]" (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co., supra,* 5 Cal.4th at p. 867, italics omitted.) The ambiguity that Alert postulates based on its hypothetical is indeed a hypothetical ambiguity unrelated to the facts of this case. It cannot affect interpretation of the Policy on the facts presented here.

 Second, Alert argues that the exclusion is ambiguous because it is unclear what quantum of physical evidence is required by the exclusion. The exclusion states that the insurer will not pay for loss of "[p]roperty that is

missing, but there is *no* physical evidence to show what happened to it . . . ." (Italics added.) The clear import of this language is that the exclusion will *not* apply if there is *some* physical evidence of what happened to the property. Fireman's Fund agrees with this interpretation. It adopts the position that "[w]here there exists evidence that is *probative or at least suggestive* of what happened to the missing property, the exclusion does not apply." (Italics added.) The language of the exclusion clearly states that it applies only if there is no physical evidence to show what happened to the insured's property.

Third, Alert finds ambiguity in the phrase "to show what happened to" the missing property. Alert posits that this phrase might be interpreted to require evidence of where the property was taken or the ultimate disposition of the property. " 'Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.' " (*Bay Cities Paving & Grading, Inc.* v. *Lawyers' Mutual Ins. Co., supra,* 5 Cal.4th at p. 867, quoting *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].) It is not reasonable to interpret the exclusion to require evidence of where a thief took the property. A commonsense reading of the exclusion is that it requires only some physical evidence of how the property was lost.

■ Language of an insurance policy should be construed in the context of the instrument as a whole " 'with regard to its intended function in the policy.' " (*Feurzeig* v. *Insurance Co. of the West, supra,* 59 Cal.App.4th at pp. 1282-1283.) The Policy also includes an exclusion for theft by employees. When the Policy is read as a whole, it is clear that Fireman's Fund was not agreeing to insure against employee dishonesty or losses due to erroneous inventories. The point of requiring some physical evidence "to show what happened to" the property is for the insurer to have some assurance that the property was lost by theft, not to require proof of how the thief disposed of the property.

■ Fourth, Alert argues that it is uncertain whether the exclusion's reference to "shortage disclosed on taking inventory" should be construed as an example of sufficient physical evidence, or an example of what will not qualify as physical evidence. It is clear from the language of the exclusion as a whole, and from its context in the Policy, that a "shortage disclosed on taking inventory" is used as an example of a situation where "[p]roperty . . . is missing, but there is no physical evidence to show what happened to it . . . ." An inventory by itself does not show what happened to any property. It only establishes what property is on hand at a point in time, allowing a comparison to property on hand at other times and to records of property acquired and sold. This construction of the "shortage disclosed on taking

inventory" clause is consistent with the purpose of the exclusion: to exclude unexplained losses.

We hold that the court below correctly concluded that the mysterious disappearance exclusion is not ambiguous. Alert argues, however, that the trial court erroneously determined that there was no physical evidence to show what happened to the missing inventory items.

 "A judgment of the lower court is presumed correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. [Citation.] Where no statement of decision is requested, it must be presumed that the trial court found facts necessary to support the judgment. [Citations.]" (*Roffinella* v. *Sherinian* (1986) 179 Cal.App.3d 230, 236 [224 Cal.Rptr. 502].) Given the short length of the trial, no statement of decision was required, and the trial court only stated his conclusion orally. (See Code Civ. Proc., § 632 [statement of decision may be made orally after a trial of one day or less].) Therefore we must uphold the judgment of the trial court if any analysis of the facts would support the conclusion that the exclusion applies.

 The evidence concerning the tripping of the burglar alarm on January 23 and the disruption of Ortbal's office on the weekend prior to January 29 certainly qualify as "physical evidence." The issue is whether the trial court properly could have concluded that these incidents were not "physical evidence to show what happened to" the property that was identified as lost on the basis of the January 31 inventory. There was substantial evidence that the two incidents had nothing to do with any theft of property. There was no sign of entry on either occasion. There was no indication that property in the warehouse was disturbed, moved or taken on either occasion. Ortbal's office was not found to be disturbed after the tripping of the burglar alarm on January 23. The state of Ortbal's office on January 29 thus is not evidence that any entry occurred on January 23. There was evidence that a rodent problem had been causing false alarms. There was evidence that some persons other than Ortbal had access to her office. Ortbal testified that there was no sign of entry into her office by window on January 29, thus distinguishing the incident of January 29 from later incidents when entry was made through the window air conditioner in Ortbal's office.

There was substantial evidence in the record to support the trial court's conclusion that there was no physical evidence that tended to account for what happened to the property identified as lost in the January 31 inventory. Thus the decision of the trial court must be upheld.

## Disposition

The judgment in favor of Fireman's Fund is affirmed. Fireman's Fund shall recover its costs on appeal.

Epstein, Acting P. J., and Curry, J., concurred.