[Cite as *Will Repair, Inc. v. Grange Ins. Co.*, 2014-Ohio-2775.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100717**

# WILL REPAIR, INC. D.B.A. OHIO OFFICE SOLUTIONS, INC.

**PLAINTIFF-APPELLANT**

vs.

# GRANGE INSURANCE CO., ET AL.

**DEFENDANTS-APPELLEES**

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-799937

**BEFORE:** Rocco, P.J., Kilbane, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 26, 2014

**ATTORNEY FOR APPELLANT**

Michael A. Partlow
Morganstern Macadams & Devito Co.
112 South Water St., Suite C
Kent, Ohio 44240

**ATTORNEYS FOR APPELLEES**

Warren S. George
Shaun E. Young
Keis & George L.L.P.
55 Public Square, Suite 800
Cleveland, Ohio 44113

KENNETH A. ROCCO, P.J.:

{¶1} Plaintiff-appellant Will Repair, Inc., d.b.a. Ohio Office Solutions, Inc. ("Will Repair") appeals from the decision of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of defendant-appellee Grange Mutual Insurance Co. ("Grange") on Will Repair's claims for declaratory judgment and breach of contract, seeking to recover for losses that resulted from an alleged theft of its business property. For the reasons that follow, we affirm the trial court's judgment.

{¶2} Will Repair designs, sells, repairs, and installs office furniture. On September 10, 2010, Patricia Patranc ("Patranc"), one of the two co-owners of Will Repair, discovered that a number of manufacturing dies, used to manufacture an office furniture system, were missing from its warehouse on East 65th Street in Cleveland. At the time of their disappearance, the dies had been stored on pallet racks near the back door of the facility. It is unknown precisely how long the dies were gone before they were discovered missing.

{¶3} When she discovered the dies were missing, Patranc called her co-owner, William Havis ("Havis"). Suspecting theft, Havis immediately went to several local scrap yards to see if any of the missing dies had been sold. At a nearby scrap yard, Tyroler Scrap Metals ("Tyroler"), Havis discovered one of the missing dies belonging to Will Repair.

{¶4} Havis learned that one of Will Repair's long-time employees, Dan Copen ("Copen"), sold the missing die to Tyroler. Tyroler identified Copen as the person who sold it the die based on a copy of Copen's driver's license it had on file. The next morning, Patranc returned to Tyroler to photograph the missing die believed to have been taken from Will Repair. Patranc was shown three additional manufacturing dies, which she identified as belonging to Will Repair. She also discovered a number of office cubicle panels and shelves belonging to Will Repair. Copen had not been authorized to scrap any of this property.

{¶5} Tyroler gave Patranc copies of 30 receipts documenting 28 visits by Copen to Tyroler over a four-month period from May 21, 2010 to September 9, 2010. However, it could not be determined, based on the information on the receipts, whether the transactions involved property belonging to Will Repair. When she returned to the office, Patranc reported the theft to police, identifying Copen as the person believed to have taken the missing property.

{¶6} After discovering the theft, Havis confronted Copen. Although he initially denied any involvement, Copen ultimately admitted taking one of the missing manufacturing dies. Copen, however, denied stealing any other company property. Will Repair terminated Copen's employment, and Copen was later arrested and prosecuted for theft. Although Will Repair originally believed Copen to be responsible for the theft of all the missing property, it now claims that there is no evidence that Copen stole anything other than one manufacturing die.

**{¶7}** At the time they discovered the missing dies, Patranc and Havis did not know exactly what property was missing. At some later point, they did a walk through of the facility to determine what was missing. They prepared a list of missing items by comparing the empty spaces and gaps in the warehouse shelving to an inventory of panels that had been prepared for the company's accountant[1] and their memories of what had been on the shelves previously. The missing property allegedly included 21 manufacturing dies, hundreds of cubicle panels, commercial shelving units, and various components for building office cubicles. Also missing was certain property belonging to Will Repair's customers. Will Repair estimated the cost of replacing the missing items, including the cost of remanufacturing the missing dies and panels, at $780,766.50.

**{¶8}** With the exception of the property found at Tyroler, none of the missing property was ever located. Neither Patranc nor Havis could state what happened to the property or exactly when it went missing. They called and visited other scrap yards in the area but were unable to locate any additional property missing from Will Repair. Although they believed the missing property must have been stolen, there were no signs of forced entry at the facility, e.g., no damaged locks and no broken doors or windows, and the alarm system that protected the premises never signaled any type of security breach during the five months preceding Patranc's discovery of the loss.

---

[1] Although it prepared annual inventories of the number of office panels on hand for use by its accountant, Will Repair did not conduct regular inventories of other property in its warehouse.

{¶9} During the relevant time period, Will Repair was insured by Grange under a Commercial Package Policy (the "policy") that included personal property coverage for "direct physical loss of or damage to Covered Property at the premises * * * caused by or resulting from any Covered Cause of Loss."  The  policy also contained the following relevant exclusions and limitations:

<u>CAUSES OF LOSS-SPECIAL FORM</u>

* * *

B.     Exclusions

    * * *

    2.     We will not pay for any loss or damage caused by or resulting from any of the following:

    * * *

        h.     Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
(1) Acting alone or in collusion with others; or
(2) Whether or not occurring during the hours of employment.

        This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

    * * *

C.     Limitations

    * * *

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

&ast; &ast; &ast;

e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**{¶10}** Shortly after the missing dies were discovered, Havis contacted Will Repair's insurance agent Al Yeckel ("Yeckel") regarding the loss. Yeckel advised that the policy did not cover employee theft, but nevertheless submitted the claim to Grange. Although it is undisputed that Grange investigated the loss and ultimately denied the claim based on exclusions in the policy, it is unclear from the record precisely when this occurred.

**{¶11}** On January 23, 2013, Will Repair filed a complaint,[2] asserting claims for declaratory judgment and breach of contract against Grange. Will Repair claimed that Grange breached the parties' contract of insurance by failing to compensate it for its missing property and sought a declaration of insurance coverage and money damages resulting from Grange's alleged improper denial of its claim. On April 5, 2013, Grange filed an answer denying the allegations of the complaint and asserting various affirmative defenses, including that the policy did not cover Will Repair's loss.

---

[2]This is a refiled action. Will Repair filed its original action against Grange (and several other defendants) on August 12, 2011. Will Repair voluntarily dismissed that action without prejudice on January 26, 2012.

**{¶12}** On September 13, 2013, Grange filed a motion for summary judgment, on among other grounds, that Will Repair's loss was not covered under the policy. Grange argued that Will Repair's claim was barred by the policy provisions excluding coverage for losses due to employee theft, losses for missing property discovered upon the taking an inventory, and losses for missing property for which there is no physical evidence to show what happened to the property.

**{¶13}** In its opposition, Will Repair conceded that the policy excluded coverage for the loss related to the one manufacturing die Copen admitted stealing. However, it argued that because there was no evidence to indicate that Copen was involved in the theft of the remaining missing property, summary judgment should be denied.

**{¶14}** On November 4, 2013, the trial court granted Grange's motion for summary judgment. The trial court held that the policy did not cover Will Repair's loss because it "excludes coverage for property stolen by Will Repair employees and for items missing without evidence of their disposition." The trial court further held that because "Will Repair cannot identify the date(s) on which items allegedly not stolen by its employee were removed from Will Repair's warehouse or supply any information concerning what may have happened to the missing items," "[n]o genuine issue of material fact has been presented to establish a compensable claim of loss under the insurance contract."

**{¶15}** Will Repair appeals the trial court's judgment, presenting the following assignment of error for review:

> The trial court erred, as a matter of law, by granting the defendants' motion
>
> for summary judgment.

**{¶16}** An appeal of a trial court's summary judgment ruling is subject to a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.,* 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

**{¶17}** Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue exists as to any material fact, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party.

**{¶18}** The moving party carries an initial burden of setting forth specific facts that demonstrate its entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to establish the existence of a genuine issue of material fact. *Id.* at 293.

{¶19} The facts in this case are undisputed. Accordingly, resolution of this appeal turns on the interpretation of the insurance contact.

{¶20} Insurance policies are construed in accordance with the same rules as other contracts. As the Ohio Supreme Court has instructed:

> When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999), citing *Employers' Liab. Assur. Corp. v. Roehm*, 99 Ohio St. 343, 124 N.E. 223, syllabus (1919); *see also* Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus (1987). We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus (1978). When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex.2000).

*Westfield Ins. Co. v. Custom Agri Sys.*, 133 Ohio St.3d 476, 2012-Ohio-4712, 979 N.E.2d 269, ¶ 8, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶21} An exclusion in an insurance policy is interpreted "'as applying only to that which is clearly intended to be excluded.'" *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). Although

ambiguous provisions in an insurance policy are "construed strictly against the insurer and liberally in favor of the insured,

* * * it is equally well settled that a court cannot create ambiguity in a contract where there is none." *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 16. Although the insured bears the initial burden of proof to establish that a policy provides coverage for a particular loss, where an insurer relies on an exclusion to deny coverage, the insurer has the burden of proving the applicability of the exclusion. *See, e.g., World Harvest Church v. Grange Mut. Cas. Co.*, 10th Dist. Franklin No. 13AP-290, 2013-Ohio-5707, ¶ 44; *Edmunds Mgt. Co. v. Century Sur. Co.,* 8th Dist. Cuyahoga No. 70441, 1997 Ohio App. LEXIS 2568, *6 (June 12, 1997), citing *Continental Ins. Co. v. Louis Marx & Co.,* 64 Ohio St.2d 399, 401, 415 N.E.2d 315 (1980).

**{¶22}** We agree with the trial court that the policy does not cover the loss in this case. Will Repair claims that its missing property was stolen from the warehouse but, with the exception of the one manufacturing die Copen admits to have stolen, does not have any idea what happened to the property, or exactly when it disappeared. It is undisputed that there were no damaged locks, no broken doors or windows, and no breaches of its security system or any other signs of forced entry or breaking and entering. The policy clearly and unambiguously excludes coverage in situations in which "[p]roperty * * * is missing * * * where there is no physical evidence to show what happened to the property." The term "physical evidence" is not defined in the policy.

Giving the term its plain and ordinary meaning, it generally refers to some type of "tangible evidence," i.e., "evidence that can be seen or touched." *Black's Law Dictionary* 556 (6th Ed.1990); *see also Natl. Grange Mut. Ins. Co. v. Elegant Slumming, Inc.*, 59 A.3d 928, 931 (Del.2013) (interpreting "physical evidence" in similar insurance policy provision to mean "any article, object, document, record or other thing of physical substance"); *Blasiar Inc. v. Fireman's Fund Inc. Co.*, 76 Cal.App.4th 748, 754, 90 Cal.Rptr.2d 374 (1999) (interpreting "physical evidence" as meaning "tangible facts or circumstances").

{¶23} Will Repair has not identified *any* evidence — much less any *physical* evidence — to show what happened to its missing property (other than the missing die admittedly stolen by Copen, which all agree was excluded from coverage under the policy). Because Will Repair had no "physical evidence to show what happened" to its missing property, its loss was excluded from coverage under a plain and ordinary reading of the policy language. *See, e.g., CTSC Boston v. Continental Ins. Co.*, 25 Fed.Appx. 320, 324 (6th Cir.2001) (although plaintiff's inference that 57 laptops, which had suddenly disappeared, were stolen "appear[ed] to be the only reasonable one," trial court did not err in concluding that policy language imposing a clear and unambiguous "physical evidence" requirement for missing property precluded coverage for the missing laptops where plaintiff did "not know when the laptops were taken * * * or by whom" and had failed to provide physical evidence to show what happened to the missing laptops); *NCF Fin., Inc. v. St. Paul Fire & Marine Ins. Co.*, Wash. App. No. 56761-6-1,

2007 Wash. App. LEXIS 308 (Feb. 20, 2007) (where insured did not know exactly how missing leased computer equipment was physically lost and did not know dates property was physically lost, insured did not satisfy physical evidence requirement for missing property coverage); *Westcom Corp. v. Greater New York Mut. Ins. Co.,* 839 N.Y.S.2d 19, 41 A.D.3d 224 (App. Div.2007) (where insured kept property in a storage unit secured by a padlock and the only evidence of the loss of property was employee's testimony that, when opening the storage unit, the property that was previously stored there was missing, there was no "physical" evidence to show "what happened to" the missing property within the meaning of insurance policy exclusion).

**{¶24}** Will Repair argues that this provision, excluding coverage for missing property "where there is no physical evidence to show what happened to the property," renders the policy's coverage for theft losses "purely illusory" and, therefore, should not have been applied to bar Will Repair's claims.    We disagree.

**{¶25}** An insurance provision is illusory "when it appears to grant a benefit to the insured, although in reality it does not." *Beaverdam Contr. v. Erie Ins. Co.*, 3d Dist. Allen No. 1-08-17, 2008-Ohio-4953, ¶ 49.  If a provision in an insurance contract renders a contract illusory, the provision is unenforceable.  *See Michaels v. Michaels,* 197 Ohio App.3d 643, 2012-Ohio-118, 968 N.E.2d 550, ¶ 15 (9th Dist.); *see also 7 Med. Sys., LLC v. Open Mri of Steubenville*, 7th Dist. Jefferson No. 11 JE 23, 2012-Ohio-3009, ¶ 39-40. Where, however, there is some benefit to an insured through an insurance policy, it is not illusory.  *World Harvest Church*, 2013-Ohio-5707 at ¶ 53.  "Courts are not inclined to

give insurance provisions meanings that would render them illusory." *Beaverdam* at ¶ 49; *see also Liqui\*Lawn Corp. v. Andersons*, 8th Dist. Cuyahoga No. 50240, 1986 Ohio App. LEXIS 6376, \*8 (Apr. 10, 1986) ("[C]ourts disfavor contract interpretations which render contracts illusory or unenforceable.").

{¶26} Will Repair argues that the policy's theft coverage is illusory because "[t]he contract purports to cover all lost property, including theft losses, yet requires that the insured be able to explain what happened to the property." It contends that the policy's "physical evidence" requirement for coverage of losses resulting from missing property is inconsistent with "real world" scenarios in which "missing property has obviously been stolen, and yet no one has any idea who committed the theft." It claims this requirement "essentially gut[s] the other provisions in the contract which purport to provide coverage for theft."

{¶27} The policy's "physical evidence" requirement for coverage of losses from missing property (the "missing property exclusion") does not require that an insured solve a theft, be able to show exactly what happened to missing property, or establish who stole missing property in order to obtain coverage for a theft loss. It simply requires some "physical evidence" of what happened to the missing property. We can envision a number of factual scenarios in which an insured would be able to point to some physical evidence of what happened to its missing property and, thereby, obtain coverage under the policy even where a suspected "theft" or other cause of property loss remains unsolved — for example, where a third-party theft occurs and is captured on videotape, a

security alarm is triggered in connection with a loss, property damage such as broken doors, windows, or locks are found in connection with missing property, items used in connection with a suspected third-party theft are left behind, or the insured has some documentation establishing how and when covered property likely disappeared. *Compare Natl. Grange Mut. Ins.*, 59 A.3d at 933 (insurance coverage existed for jewelry packages claimed to have been accidentally thrown away, notwithstanding physical evidence requirement for coverage of missing property, where insured introduced purchase orders invoices, shipping receipts, and photographs showing where packages were placed upon arrival and proximity of this area to trash cans); *see also Blasiar*, 76 Cal. App.4th at 755, 90 Cal. Rptr.2d 374 (although activation of burglar alarm and evidence that office was "out of order" qualified as "physical evidence," trial court properly determined they did not constitute "physical evidence to show what happened" to missing property where there was "substantial evidence that the two incidents had nothing to do with any theft of property"). Given that the policy would have covered third-party theft losses (and perhaps other types of losses) under these scenarios and others, it cannot be said that the policy provisions at issue were illusory and provided no benefit to the insured. As such, the trial court did not err in enforcing the policy's exclusions and entering summary judgment in favor of Grange.

{¶28} Given that we have determined that the policy did not cover Will Repair's loss and that the trial court did not err in entering summary judgment based on the employee theft exclusion and missing property exclusion, we need not address Will

Repair's remaining arguments, which relate to other exclusions and how compensation for covered losses is calculated under the policy. Will Repair's assignment of error lacks merit and is overruled.

**{¶29}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR