**SAFE AUTO INSURANCE COMPANY, Appellee,**

v.

**SEMENOV et al., Appellants.**

[Cite as *Safe Auto Ins. Co. v. Semenov*, 192 Ohio App.3d 37, 2011-Ohio-163.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2010–08–076.

Decided Jan. 18, 2011.

38

David A. Goldstein Co., L.P.A., and Seth K. Kleinman, for appellee.

Law Offices of Blake R. Maislin, L.L.C., and T. Tod Mollaun, for appellant.

James C. Zury, for defendant Progressive Insurance Co.

RINGLAND, Judge.

{¶ 1} Defendant-appellant, Robert McGregor, appeals a decision of the Warren County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Safe Auto Insurance Company (Safe Auto).[1]

{¶ 2} On April 26, 2006, Safe Auto issued an insurance policy to Anthony Semenov. On May 31, 2006, Semenov purchased a 1999 Mercury Sable sedan. On June 28, 2006, while driving the 1999 Mercury Sable, Semenov and McGregor, his passenger, were involved in an automobile accident with Michael Taggart. It is undisputed that the insurance policy was in effect at the time the accident occurred.

{¶ 3} Safe Auto filed an action for declaratory judgment, claiming that it was not obligated to provide coverage to Semenov or McGregor based upon the terms of the automobile policy. The trial court granted summary judgment in favor of Safe Auto. On appeal, this court reversed the trial court's decision by finding that the trial court misread the insurance policy, failed to address the parties' arguments, and proffered a decision premised on issues not raised by the parties, thereby leaving many of the material issues unresolved. See *Safe Auto Ins. Co. v. Semenov*, Warren App. No. CA2008–10–123, 2009-Ohio-2334, 2009 WL 1395927, ¶ 12 (*Semenov I* ).

{¶ 4} On remand, although given an opportunity to file further dispositive motions and responsive pleadings, the parties chose to stand on their original motions previously filed on January 7, August 5, and August 27, 2008. Once again, the trial court granted summary judgment in favor of Safe Auto. The court concluded that the policy was an unambiguous "Named Operator–Non–Owned Vehicle" policy, which provides no coverage to vehicles owned by Semenov. McGregor timely appeals, raising a single assignment of error:

{¶ 5} "The trial court erred to the prejudice of defendant-appellant in granting plaintiff-appellee's motion for summary judgment."

{¶ 6} On appeal, a trial court's decision granting summary judgment is reviewed de novo. *Burgess v. Tackas* (1998), 125 Ohio App.3d 294, 296, 708

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

**40**

N.E.2d 285. Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. See Civ.R. 56(C); see also *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The movant bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once this burden is met, the nonmovant has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id.

{¶ 7} A "Named Operator–Non–Owned Vehicle" policy is an insurance policy issued to an individual to cover any automobile driven by the individual regardless of the vehicle's ownership. Under the explicit terms of the Safe Auto policy issued to Semenov, if the policy was a "Named Operator–Non–Owned Vehicle" policy, the policy would not cover any vehicles owned by Semenov, including the 1999 Mercury Sable involved in the accident. The trial court inexplicably concluded, "No party has contested the fact that Semenov has a Named–Operator–Non–Owned Vehicle policy." Rather, the primary contention in this matter is premised upon whether the policy issued to Anthony Semenov was a "Named Operator–Non–Owned Vehicle" policy or whether the policy was to provide coverage for a certain vehicle. To determine the nature of the Safe Auto policy, we must review the terms of the insurance contract.

{¶ 8} An insurance policy is a contract. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 9. When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898. An insurance contract must be examined as a whole, and a court will presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. Courts look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Galatis* at ¶ 11.

{¶ 9} On the other hand, when a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. *Shifrin v. Forest City*

*Ents., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499. In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. There are limitations to the preceding rule. *Galatis* at ¶ 14. "Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Morfoot v. Stake* (1963), 174 Ohio St. 506, 23 O.O.2d 144, 190 N.E.2d 573, paragraph one of the syllabus.

{¶ 10} The insurance contract in this case consists of the insurance policy and the declarations page. The declarations page shows what coverage and the amount of coverage that is being issued. A "covered vehicle" under the policy includes: (1) any vehicle shown on the declarations page and (2) any additional vehicle acquired during the policy period that is not covered by another insurance policy. In the case of a newly acquired vehicle, Safe Auto provides coverage up to 30 days after the insured becomes the owner. The accident in this case occurred 29 days after Semenov had acquired the 1999 Mercury Sable. If the Mercury Sable is a "covered vehicle" under the policy, McGregor would be an "insured person" as an occupant of the "covered vehicle."

{¶ 11} However, in the instance of a "Named Operator–Non–Owned Vehicle" policy, the policy states, "If you elect Named Operator–Non–Owned Vehicle coverage, * * * [t]he general policy definition of 'covered vehicle' is deleted and no coverage is provided with respect to a covered vehicle under this policy." Based upon this language, if Semenov elected "Named Operator–Non–Owned Vehicle" coverage, no vehicles owned by him would be covered by the policy, including the 1999 Mercury Sable involved in the accident.

{¶ 12} Accordingly, we turn to the declarations page to determine the type of insurance obtained by Semenov. The insurance policy states, "The insurance granted is only with respect to such and so many of the following coverages as are shown with premium listed under each described vehicle." The policy lists "1" under the "VEH # " column of the policy and identifies a vehicle year of "1986." Further, under the coverage-premium section, the policy states that the premium for "VEH 1" is $631. Finally, the policy lists two "excluded drivers," Victor Semenov and Lucy Semenov. As noted above, the terms of the insurance policy state that if the insured is seeking "Named Operator–Non–Owned Vehicle" coverage, such coverage must be "elected." Safe Auto offers no evidence of an election of "Named Operator–Non–Owned Vehicle" coverage by Semenov or any evidence of Semenov seeking "Named Operator–Non–Owned Vehicle" coverage.

{¶ 13} Despite these terms indicating that insurance was sought for a specific vehicle, the declarations page fails to list any details such as the make, model, body type, or VIN of a vehicle. The policy lists only the year of a vehicle. This absence of information suggests that Semenov was not seeking coverage for a certain vehicle. Moreover, no evidence has been submitted indicating whether Semenov, in fact, owned a vehicle at the time he purchased the Safe Auto policy for which he was seeking coverage. Similarly, however, no evidence has been offered showing that Semenov did not own a vehicle when the policy was obtained. As a result, a question of fact remains on this issue.

{¶ 14} Based upon the confusing declarations page, we find that the insurance policy remains ambiguous. Although the policy lists coverage for "VEH 1," no other details of the vehicle are listed. As a result, we may consider extrinsic evidence to ascertain the parties' intent. See *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d at 638, 597 N.E.2d 499. Extrinsic evidence, though, is inadmissible when it is sought to contradict the express terms of a written agreement. Id.; *Lake Cty. Bd. of Commrs. v. Consumers Ohio Water Co.* (Dec. 22, 2000), Lake App. No. 99–L–092, 2000 WL 1876631, *3.

{¶ 15} Safe Auto offers the affidavit of Eugene McShane, a litigation adjuster for Safe Auto. In his affidavit, McShane claims that Semenov was issued "Named Operator–Non–Owned Vehicle" coverage. Safe Auto attributes the ambiguities on the declarations page to its computer system. According to McShane, "[t]he computer system utilized by Plaintiff Safe Auto does not allow an insurance policy to be instituted without a vehicle year being first put into the system, even if there is no vehicle to be insured. The entry of a vehicle year and its appearance on the declarations page does not automatically mean that a vehicle is being insured. In the absence of a fully described covered vehicle, an insurance policy issued by Plaintiff Safe Auto is designated as a 'Named Operator–Non–Owned Vehicle Coverage' policy. * * * [T]he insurance policy * * * provided only 'Named Operator–Non–Owned Vehicle' coverage insomuch as there is a named insured listed on the Declarations page but no covered vehicle listed on the Declarations Page."

{¶ 16} However, the terms of the insurance contract contradict McShane's statements. As explained above, the declarations page does identify a vehicle, designating the number of vehicles as "1" and listing a vehicle year of "1986." Moreover, the declarations page lists the premium for "VEH 1" as $631. McShane offers no explanation for why the number of vehicles is listed as "1" and why the premium for "VEH 1" totals $631. McShane also attempts to add language to the terms of the contract. McShane claims that if the policy does not "fully describe" the covered vehicle—implying that the make, model, body type, and VIN of a vehicle must be listed—the policy is providing coverage for a

"Named Operator–Non–Owned" vehicle. Nowhere in the contract does it require that a "full description" of the vehicle be provided on the declarations page for the vehicle to be covered by the policy.

{¶ 17} Additionally, the declarations page lists two other individuals, Victor Semenov and Lucy Semenov, as "excluded drivers." If the policy was issued only to provide individual "Named Operator–Non–Owned" vehicle coverage, as Safe Auto claims, and not coverage for a specific vehicle, exclusion of additional "drivers" would be unnecessary. As a result, the policy remains ambiguous, and questions of fact remain regarding the type of policy issued to Anthony Semenov and whether McGregor was entitled to coverage under the policy.

{¶ 18} The dissent argues that the "primary contention" before the trial court was not whether the policy provided "Named Operator–Non–Owned" coverage, but rather, whether the policy was "so ambiguous that it had to be construed against Safe Auto and in McGregor's favor," and therefore, this court should limit its consideration to "only those issues raised below." However, while we may agree that this issue was not the "primary contention" before the court, we find it clear that McGregor did, in fact, raise this issue in his August 27, 2008 memorandum in opposition to Safe Auto's motion for summary judgment. Moreover, based on the language found in *Semenov I,* it is apparent that this issue, among a litany of others, was properly raised to the trial court and subsequently preserved by this court upon remand. With genuine issues of material fact remaining, this dispute may be better resolved at trial.

{¶ 19} Accordingly, McGregor's sole assignment of error is sustained.

Judgment reversed<br>and cause remanded.

HENDRICKSON, J., concurs.

POWELL, P.J., dissents.

POWELL, Presiding Judge, dissenting.

{¶ 20} I respectfully dissent from the opinion of the majority. Once again we are remanding this matter to the trial court to do that which it has already done. I believe that the trial court complied with our first remand in its well-reasoned decision of July 26, 2010.

{¶ 21} First, the facts are substantially as the majority states, with one additional item of note on the declarations page. On the same line as "1986" under "Serial Number" is the entry "N/A." The majority inexplicably ignores this entry. A serial number being "N/A" can only mean that there was no car to be insured.

{¶ 22} Next, as noted by the trial court, the parties declined the opportunity to modify their positions on remand. They asked the court to reconsider the motion that Safe Auto filed on August 5, 2008, and the memoranda pertinent thereto. The pleadings limit the trial court and this court to that which was presented to the trial court in 2008. The majority states that the trial court, in its July 26, 2010 decision, "inexplicably concluded, 'No party has contested the fact that Semenov has a Named–Operator–Non–Owned Vehicle policy.'" (Majority opinion at ¶ 17.) A review of the record shows that McGregor never argued that there was no named-operator-nonowned vehicle ("NONOV") coverage; rather, he argued only two main points: first, that the policy was ambiguous between the declarations page and the NONOV language, and second, that Semenov intended to cover the 1999 Mercury Sable.

{¶ 23} Next the majority discusses the election of NONOV coverage stating that Safe Auto offered no proof that an election was made. Safe Auto offers no evidence of election because it was not an issue raised by McGregor's memo and reply memo in opposition to the first summary judgment. McGregor never argued that there were no NONOV terms or that there was no election, so no election document was necessary for the decision. In fact, the record reflects that McGregor wanted to depose Semenov on his intention to insure the Mercury or a car, but could not because Semenov was unavailable. Further, there was no evidence of Semenov owning a car at the time the insurance policy was issued. Finally, the trial court, in its first summary judgment, ruled that Semenov could not have intended to buy a policy of car insurance for a car he did not yet own, and thus the policy language clearly indicated application of NONOV terms. Therefore, summary judgment for Safe Auto was warranted. So the primary contention was not, as the majority says, whether there was a NONOV policy, but rather, whether the policy was so ambiguous that it had to be construed against Safe Auto and in McGregor's favor.

{¶ 24} While these points were raised on appeal, they were not argued below. As stated above, the parties limited the issues on remand to that which they had previously argued in 2008. We too should limit our consideration to only those issues raised below. The only other approach is to do a complete review of the Civ.R. 56 material and make our own decision. Were we to do that, the "N/A" on the declarations page would seem to indicate that a serial number is not applicable because there was no car. And McGregor offered no evidence that there was a car when the policy was issued. Both these items, not discussed by the majority, indicate far less ambiguity than is suggested. I do not see an ambiguity.

{¶ 25} Finally, since we review summary judgment de novo, the majority would better serve the trial bench by deciding that this policy is ambiguous and

entering summary judgment in favor of McGregor on the question of coverage and remanding to the trial court for a hearing on damages rather than requiring yet another consideration of ambiguities. The trial court has said twice that the policy is not ambiguous; a third time won't be a charm.

{¶ 26} Therefore, I would find that the trial court complied with our remand, fully considered the matter, and properly applied the law as to summary judgment. I would affirm.