[Cite as *W. Res. Academy v. Franklin*, 2013-Ohio-4449.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WESTERN RESERVE ACADEMY | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| ROBERT J. FRANKLIN, ET AL. | : | Case No. 2012CA00207 |
| | : | |
| | : | |
| Defendants - Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Case No.
2012CV00579

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT:     October 7, 2013

APPEARANCES:

For Plaintiff-Appellant

JASON K. WRIGHT
KEVIN C. SUSMAN
Weltman, Weinberg & Reis Co., L.P.A.
323 West Lakeside Avenue, Suite 200
Cleveland, OH 44113

For Defendants-Appellees

ROBERT J. FRANKLIN, PRO SE
LISA FRANKLIN, PRO SE
425 N. Front Street # 407
Columbus, OH 43215

*Baldwin, J.*

{¶1}   Plaintiff-appellant Western Reserve Academy appeals from the October 16, 2012 Judgment Entry of the Stark County Court of Common Pleas holding that plaintiff-appellant was not entitled to damages from defendants-appellees Jeff and Lisa Franklin.

STATEMENT OF THE FACTS AND CASE

{¶2}   Appellant Western Reserve Academy operates a boarding school located in Hudson, Ohio. For the 2006-2007 school year, the total cost for tuition, room and board and all meals for a boarding student was $34,000.00 not including a $2,000.00 non-refundable deposit.

{¶3}   On or about April 6, 2006, appellees signed an Enrollment Contract with appellant enrolling their son[1] Nicholas and paid the $2,000.00 non-refundable deposit. The Enrollment Contract stated, in relevant part, as follows: ""The undersigned agrees that enrollment under this Enrollment Contract may be cancelled by the undersigned without payment of damages other than forfeiture of the Non-Refundable Deposit only by delivering or mailing to the School prior to July 1, 2006 a written notice of withdrawal. In the event written notice of withdrawal is delivered or mailed on or after July 1, 2006 but before September 1, 2006, the undersigned agree to remain obligated to pay the First Payment. The undersigned shall remain obligated to pay the entire tuition fee in full in the event of absence, dismissal or withdrawal on or after September 1, 2006." The first payment was for $17,000.00.

{¶4}   Appellees also chose to pay an additional sum of $1,428.00 to participate in a Tuition Refund Plan which was issued by One Beacon Insurance. The Plan

---

[1] Nicholas is appellee Jeff Franklin's stepson.

provided that in the event of a non-medical withdrawal, it would pay "50% of the unused yearly insured fees provided the student has attended more than fourteen consecutive calendar days beginning with the student's first class day of attendance in the academic year."

{¶5} There is no dispute that on October 26, 2006, appellees withdrew Nicholas from school for non-medical reasons. In a letter to appellant, appellee Jeff Franklin indicated that they were withdrawing Nicholas due to a custody dispute involving his father. After appellees submitted a Tuition Refund Plan claim through appellant, the plan, on or about November 15, 2006, paid $13,868.42 to appellant.

{¶6} On February 21, 2012, appellant filed a complaint against appellees, alleging that appellees were indebted to appellant in the amount of $9,322.98 for tuition.

{¶7} Subsequently, a bench trial was held on September 27, 2012. The trial court, pursuant to Judgment Entry filed on October 16, 2012, found that although appellant had proved that appellees breached the contract with appellant, appellant was not entitled to damages. The trial court found that it was "virtually impossible" for Nicholas to complete the school year away from home due to the major custody dispute between his parents. According to the trial court, "[i]t's easy to see how a child being torn between both parents, scared, frightened, and removed from the presence of both parents during this time period certainly could become ill. The uncertainty of his status with his parents alone would cause an extended amount of trauma." The trial court also found the contract to be both unreasonable and unconscionable and that the amount due should be "viewed as more of a penalty."

{¶8} Appellant now raises the following assignments of error on appeal:

{¶9} THE TRIAL COURT ERRED WHEN IT FOUND THAT THE ENROLLMENT CONTRACT WAS UNCONSCIONABLE AND THAT THE REMAINING BALANCE SHOULD BE VIEWED AS A PENALTY.

{¶10} THE TRIAL COURT ERRED WHEN IT FOUND THAT THE APPELLEE'S (SIC) BREACH OF CONTRACT WAS EXCUSED BY THE DOCTRINE OF IMPOSSIBILITY.

I

{¶11} Appellant, in its first assignment of error, argues that the trial court erred in finding that the Enrollment Contract was unconscionable and that the remaining balance was a penalty. We agree.

{¶12} Under Ohio law, a contract clause is unconscionable where there is the absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. *Collins v. Click Camera and Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 ( 2nd Dist 1993).

{¶13} Unconscionability embodies two separate concepts: (1) substantive unconscionability, i.e. "those factors which relate to the contract terms themselves and whether they are commercially reasonable," and procedural unconscionability, i.e. "those factors bearing on the relative bargaining position of the contracting parties." Id. In *Collins,* the court explained the difference between the two concepts as follows:

{¶14} "Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been

developed for this category of unconscionability. However, courts examining whether a particular limitations clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability.....

{¶15} "Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, e.g., 'age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.'" Id. at 834. (Citations omitted).

{¶16} The issue of unconscionability is a question of law. See *Ins. Co. of North Am. v. Automatic Sprinkler Corp.* , 67 Ohio St.2d 91, 98, 423 N.E.2d 151 (1981).

{¶17} In the case sub judice, there was no evidence that appellees lacked a meaningful choice or that they were in an unequal bargaining position in terms of  the contract. There was no evidence of coercion or duress or that appellees were pressured into signing the contract.  At the trial, appellees did not call any witnesses.

{¶18} Moreover, the Ohio Supreme Court considered the issue of whether a cancellation provision was unenforceable as a penalty in *Lake Ridge Academy v. Carney,* 66 Ohio St.3d 376, 613 N.E.2d 183 (1993). In such case, a private school brought an action against a student's father for breach of contract. The father had signed a contract with the school to enroll his son for the 1989-1990 school year. The contract contained a cancellation date of August 1, 1989 and stated that if enrollment

was cancelled after such date, the parent or guardian for the child would be responsible for the full tuition, books and supplies charges. On August 7, 1989, the defendant cancelled the contract and the school sued for breach of contract, seeking the balance due under the contract.

{¶19} After the trial court entered judgment in favor of the defendant on the basis that he had substantially complied with the cancellation provision and the school was not harmed by the late withdrawal, the school appealed. The Court of Appeals reversed, finding that the defendant had breached the contract and that the clause requiring the defendant to pay the full tuition was not punitive, but rather constituted a valid liquidated damages provision.

{¶20} In affirming the judgment of the Court of Appeals, the Ohio Supreme Court stated, in relevant part, as follows: "when Carney and Lake Ridge entered into their contract in March 1989, the damages that Lake Ridge might suffer as a result of a breach by Carney were 'uncertain as to amount and difficult of proof.' As the court of appeals explained, Lake Ridge goes through a long budgeting process which begins each year in January and ends in the fall. The tuition money paid by students is pooled and goes towards staff salaries and benefits, department budgets, student materials, maintenance, improvements, and utilities. Trial testimony reveals that the school budget process is often an uncertain science; it is quite clear that Lake Ridge would be unable to calculate and prove the precise damages caused by the loss of one student's tuition…..

{¶21} "Finally, damages in the amount of the full tuition are not disproportionate to the actual damages suffered by Lake Ridge. Because by August 1 the Lake Ridge

budget was nearly finalized and it assumed revenues which included Carney's full tuition, it is not unreasonable to conclude that Lake Ridge's actual damages were the equivalent of one full tuition. The headmaster testified that if Lake Ridge enjoyed any savings from Michael Carney's withdrawal, they were 'minuscule.' While we cannot say that Lake Ridge's actual damages were exactly equivalent to full tuition, we can say with conviction that full tuition is not *disproportionate* to the school's actual damages." Id at 383-384.

{¶22}   Similarly, at the trial in this case, John Tortelli, appellant's chief financial officer, testified that appellant hired teachers and staff based on its projections of how many students will attend the school year.  He further testified on redirect that the school had only 403 students and that if a student withdrew after the start of the school year, it was not the practice of people to move students in the middle of a semester. Tortelli also testified that the budget for the school year was based on the money coming in for Nicholas' spot.

{¶23}   Based on the foregoing, we find that the trial court erred in finding that the Enrollment Contract was unconscionable and that the remaining balance was a penalty.

{¶24}   Appellant's first assignment of error is, therefore, sustained.

II

{¶25}   Appellant, in its second assignment of error, argues that the trial court erred in finding that appellees' performance of the contract was impossible. We agree.

{¶26}   Impossibility of performance occurs where, after the contract is entered into, an unforeseen event arises rendering impossible the performance of one of the contracting parties. *State v. Curtis,* 2nd Dist.  Greene No. 2008CA22, 2008–Ohio–5643.

Performance may be impracticable because it will involve a risk of injury to person or property that is disproportionate to the ends to be attained by performance. *B–Right Trucking Co. v. Warfab Field Machining and Erection Corp.,* 11th Dist.   Trumbull No.2000–T–0072, 2001–Ohio–8724. "Impracticability" means more than "impracticality." *Id.* at 5. A mere change in the degree of difficulty or expense does not amount to impracticability. *Id.* A party is expected to use reasonable efforts to surmount obstacles to performance, and performance is only impracticable if it is so in spite of such efforts. *Id.*

{¶27}   In the case sub judice, there is no dispute that Nicholas was not withdrawing due to medical reasons. Both appellees testified that he did not withdraw because he was ill or had any medical issues.  Appellee Robert Franklin testified that Nicholas withdrew because he was not happy at the school and admitted writing a letter to appellant indicating that Nicholas was withdrawing due to a domestic dispute involving his father.

{¶28}   Appellees failed to provide any evidence indicating that there was an impossibility of performance or prevention of performance.  Moreover, there were no unforeseeable events that prevented appellees from complying with the terms of the contract in this case.

{¶29}   Appellant's second assignment of error is, therefore, sustained.

{¶30}   Accordingly, the judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded for further proceedings consistent with our Opinion.

By: Baldwin, J.

Gwin, P. J. and

Wise, J. concur.

_____
 HON. CRAIG R. BALDWIN

_____
 HON. W. SCOTT GWIN

_____
 HON. JOHN W. WISE

CRB/dr

[Cite as *W. Res. Academy v. Franklin*, 2013-Ohio-4449.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WESTERN RESERVE ACADEMY | : | |
| | : | |
| Plaintiff - Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ROBERT J. FRANKLIN, ET AL. | : | |
| | : | |
| Defendant - Appellee | : | CASE NO. 2012CA00207 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is reversed and this matter is remanded. Costs assessed to appellees.

_____
HON. CRAIG R. BALDWIN

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE