[Cite as *Collins v. Auto-Owners Ins. Co.*, 2017-Ohio-880.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

JON COLLINS,                                           :

    Plaintiff-Appellee,                           :            CASE NO.   CA2016-08-074

                                                      :            O P I N I O N
  - vs -                                                            3/13/2017

                                                      :

AUTO-OWNERS INSURANCE COMPANY,  :

    Defendant-Appellant.                      :

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 15 CV 87298

Rothchild Law Office Co., LPA, Barry A. Rothchild, 101 West Central Pkwy., Cincinnati, Ohio 45202, for plaintiff-appellee

Green & Green, Lawyers, Erin B. Moore, 800 Performance Place, Suite 109, Dayton, Ohio 45402, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1}   Defendant-appellant, Home-Owners Insurance Company,[1] appeals a decision

of the Warren County Court of Common Pleas, granting in part and denying in part

---

1. We note Jon D. Collins' complaint misidentified appellant as "Auto-Owners Insurance Company", which is an affiliated company of appellant.  This clerical error did not deprive the trial court of jurisdiction because it is the substance of the pleadings that determines the proper parties.  *See Ebbing v. Stewart*, 12th Dist. Butler No. CA2016-05-085, 2016-Ohio-7645, ¶ 26, citing *Engelhart v. Bluett*, 1st Dist. Hamilton No. C-160189, 2016-Ohio-7237, ¶ 11-12.

appellant's motion for summary judgment. For the reasons that follow, we reverse the decision of the trial court.

{¶ 2} This action stems from an automobile accident that allegedly occurred on October 23, 2013 involving appellee, Jon D. Collins. Appellee was not at fault in the accident and settled his claims with the tortfeasor's insurance company for the tortfeasor's insurance policy limits with appellant's consent. However, the tortfeasor's policy limits did not fully compensate appellee for his injuries sustained in the accident. Therefore, appellee filed claims pursuant to a prepaid policy his now-deceased father, Lawrence Glenn Collins, held with appellant (No. 44-846-998-00). Appellant denied appellee's claims and on June 1, 2015, appellee filed a complaint for declaratory judgment seeking a declaration of the rights, obligations, and responsibilities between the parties pursuant to the insurance policy. In answering appellee's complaint, appellant filed a counterclaim for declaratory judgment. On August 25, 2015, appellant moved for summary judgment on the declaratory judgment claim. The trial court granted appellant's motion with respect to appellee's medical claims, and denied the motion with respect to appellee's underinsured/uninsured motorist coverage ("UIM") claims.

{¶ 3} Appellee contends that at the time of the accident he had insurance coverage through his father's prepaid policy issued by appellant. Appellee's father died on August 12, 2013, prior to the expiration of the policy. Appellee's father was the sole named insured on the policy which ran from July 2, 2013 to January 2, 2014. The policy listed appellee as a "rated driver" and identifies two insured vehicles. Appellee was not driving one of these two insured vehicles at the time of the accident. Appellee lived at the residence listed on the insurance policy – 4868 Union Rd, Franklin, OH 45005-5128 – both at the time his father contracted with appellant and at the time of the accident. With respect to UIM coverage, the policy states, in pertinent part:

- 2 -

### 2. COVERAGE[2]

**a.** **We** will pay compensatory damages, including but not limited to loss of consortium, any person is legally entitled to recover from the owner or operator of an **uninsured automobile** because of **bodily injury** sustained by an injured person while **occupying** an **automobile** that is covered by **SECTION II – LIABILITY COVERAGE** of the policy.

**b.** If the first named insured in the Declarations is an individual, this coverage is extended as follows:
**(1) we** will pay compensatory damages, including but not limited to loss of consortium, **you** are legally entitled to recover from the owner or operator of an **uninsured automobile** because of **bodily injury you** sustain:
> **(a)** when **you** are **occupying** an **automobile** that is not covered by **SECTION II – LIABILITY COVERAGE** of the policy; or
> **(b)** when **you** are not **occupying** any **automobile** that is covered by **SECTION II – LIABILITY COVERAGE** of the policy.

**(2)** The coverage extended in **2.b.(1)** immediately above is also extended to a **relative** who does not own an **automobile**.

{¶ 4} The policy defines **relative** as "a person who resides with **you** and who is related to **you** by blood, marriage or adoption[, and] includes a ward or foster child who resides with **you**." In turn, "[y]**ou** or **your** means the first named **insured** shown in the Declarations and if an individual, **your** spouse who resides in the same household." The policy's UIM provisions also contain the following exclusion:

### 3. EXCLUSIONS

Uninsured Motorist Coverage does not apply:

\* \* \*

> **g.** to any \* \* \* executor, administrator or beneficiary of any named insured \* \* \* unless the \* \* \* executor, administrator or beneficiary is operating or **occupying** an **automobile** for which Uninsured Motorists Coverage is provided by this policy.

---

2. We note the words in bold type are defined in the definitions section of the policy.

Finally, the policy contains an assignment clause, which states, in pertinent part:

**SECTION VI – GENERAL CONDITIONS**

* * *

**7. Assignment**

No interest in this policy may be assigned without **our** written consent. But, if **you** should die within the policy term, the policy will cover as though named in the Declarations:

a.  **your** spouse, if **you** are an individual;

b.  **your** legal representative but only with respect to his legal responsibility for the maintenance or use of **your automobile**; and

c.  any person having proper temporary custody of **your automobile** until a legal representative is appointed;

provided **we** are given written notice of **your** death within 60 days. This requirement does not apply with regard to **your** spouse.

{¶ 5} The trial court found that appellee resided with his father when his father contracted with appellant to form the prepaid insurance agreement and that appellant accepted full payment of the premiums for a coverage period up through January 2, 2014, which includes the date of the 2013 accident. The trial court further found that even though the father died before the accident, appellee was a resident of his father's home at the time of the accident. The trial court stated "[t]o hold otherwise would create an absurd result and leave 'family member residents' without insurance on the day of the insurance holder's passing." Based on these findings, the trial court held the UIM provisions applied to appellee at the time of the accident and denied in part appellant's motion for summary judgment on this basis.

{¶ 6} Appellant timely appealed the trial court's denial of summary judgment as to the UIM provisions of the policy.

- 4 -

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT'S MOTION FOR SUMMARY JUDGMENT IN ITS ENTIRETY.

{¶ 9} Appellant presents three issues for review. First, appellant asserts that appellee does not qualify for UIM coverage pursuant to the policy definition of a "relative" to the named insured because appellee no longer resided with the named insured, as appellee's father was deceased prior to the date of the underlying accident. Second, appellant contends the above-mentioned UIM exclusion in the policy must be applied as written because it unambiguously excludes claims by beneficiaries and legal representatives of the deceased named insured for injuries arising out of the use of noninsured automobiles. Third, the insurance policy is not illusory because it continues to provide coverage after the death of the named insured in other circumstances distinct from the manner in which appellee sought to recover.

{¶ 10} We review a trial court's ruling on a motion for summary judgment de novo. *Grizinski v. Am. Express Fin. Advisors, Inc.*, 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.). "'De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" *Morris v. Dobbins Nursing Home*, 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14, quoting *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997). Summary judgment is proper if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, L.L.C.*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.).

{¶ 11} Both parties agree that there are no genuine issues of material fact that would

prevent this matter from being decided on summary judgment. Further, both parties agree that the issue in question is a matter of law, the determination of which depends upon the interpretation of the aforementioned automobile insurance policy. *See Leber v. Smith*, 70 Ohio St.3d 548, 553, 1994-Ohio-361 ("The interpretation of an insurance contract involves a question of law to be decided by a judge").

{¶ 12} An insurance policy is a contract; therefore, it must be interpreted in accordance with the rules of construction applicable to all other contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 665 (1992). The role of a court in interpreting an insurance policy is to give effect to the intent of the parties to the agreement. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. Thus, we "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Id.* "[W]hen words used in a policy of insurance have a plain and ordinary meaning, it is neither necessary nor permissible to resort to construction unless the plain meaning would lead to an absurd result." (Citation omitted.) *Travelers Indemn. Co. v. Reddick*, 37 Ohio St.2d 119, 121 (1974). "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Galatis* at ¶ 11.

### A. Uninsured/Underinsured Motorist Coverage

{¶ 13} Appellant contends a determination of whether UIM coverage applies to appellee follows a three-step sequential path, which asks the following questions: (1) was appellee a named insured, (2) was appellee injured while occupying an insured vehicle, and (3) does appellee qualify as a "relative" of the named insured as defined by the policy. It is undisputed that appellee was neither a named insured nor was he injured while occupying an insured vehicle. Therefore, the question of whether UIM coverage applies in this case turns on whether appellee is a relative of the now-deceased named insured as defined in the policy. We hold that appellee did not fit this definition at the time of the accident; thus,

appellee was not entitled to UIM coverage.

{¶ 14}  As stated above, the insurance policy extends coverage under its UIM provisions to a "relative" for compensatory damages for bodily injury sustained while occupying an automobile not covered by the policy that the "relative" would be entitled to recover from the owner or operator of any uninsured/underinsured automobile.  "Relative" is defined as "a person who resides with **you** and who is related to **you** by blood, marriage, or adoption[, and] includes a ward or foster child who resides with **you**."  In turn, "[y]ou or **your** means the first named **insured** shown in the Declarations and if an individual, **your** spouse who resides in the same household."  There is no dispute that appellee is the son of the named insured on the policy.  However, there is a dispute as to whether appellee "resided with" the named insured at the time of the accident.

{¶ 15}  Appellant argues that "reside" is used in the present tense; thereby, requiring that the related person *currently* live with the named insured at the time of accident.  Since the named insured was dead at the time of the accident, appellee did not *currently* live with the named insured as required by the definition.  Appellee asserts appellant's construction is misguided because it would require appellee to reside with the named insured at the cemetery rather than the residence listed on the policy.  Appellee argues that although "relative" is defined in the policy, "reside" is not; therefore, the term is ambiguous.

{¶ 16}  Preliminarily, we recognize that "reside" is undefined in the insurance policy.  However, the mere fact that a term in a contract is undefined does not necessitate a finding of ambiguity.  *Moccabee v. Progressive Ins. Co.*, 6th Dist. Huron No. L-98-1069, 1998 WL 700670, *3 (Oct. 9, 1998).  Rather, "[w]hen construing undefined words in an insurance policy, a court must give the words used in the contract their plain and ordinary meaning." (Citation omitted.)  *Prudential Property & Cas. Ins. Co. v. Koby*, 124 Ohio App.3d 174, 177 (11th Dist.1997).  The plain and ordinary meaning of "reside" is "to dwell permanently or

continuously." *State v. Toles*, 4th Dist. Gallia No. 99 CA 9, 1999 WL 1232092, *2 (Dec. 8, 1999), citing *Black's Law Dictionary* (5th Ed.1979) 1176. Further, as defined by Merriam-Webster's Online Dictionary and Thesaurus, the word "with" is "a function word to indicate a participant in an action, transaction, or arrangement." *Merriam-Webster's Online: Dictionary and Thesaurus*, https://www.merriam-webster.com/dictionary/with?utm_campaign=sd&utm _medium=serp&utm_source=jsonld (accessed February 16, 2017). Thus, the plain and ordinary meaning of the phrase "reside with" – as relevant to the policy at hand – means to presently participate in the action, transaction, or arrangement of permanently or continuously dwelling with the named insured.

{¶ 17} Because we find the phrase "reside with" has a plain and ordinary meaning, the phrase is not ambiguous and it would be "neither necessary nor permissible to resort to construction unless the plain meaning would lead to an absurd result." *Travelers*, 37 Ohio St.2d at 121. Here, as analyzed below, the policy provides coverage after the named insured's death in a variety of different fashions. The fact that a particular situation may arise that does not fit within the scope of such coverage does not mean the application of a term's plain and ordinary meaning has led to an absurd result. *See World Harvest Church v. Grange Mut. Cas. Co.*, Slip Opinion No. 2016-Ohio-2913, ¶ 35 (stating the fact that a contract's operation may cause a hardship on one of the parties, while benefitting another, does not create ambiguity in an otherwise unambiguous agreement), citing *S&M Constructors, Inc. v. City of Columbus*, 70 Ohio St.2d 69, 71 (1982).

{¶ 18} Nonetheless, in support of appellee's ambiguity argument, he cites *Prudential Property*, which held:

> [T]he words "resident," "residence" and "residing" have no precise, technical and fixed meaning applicable to all cases. "Residence" has many shades of meaning, from mere temporary presence to the most permanent abode. It is difficult to give an exact or even satisfactory definition of the term "resident," as the

term is flexible, elastic, slippery and somewhat ambiguous. * * * Definitions of "residence" include "a place of abode for more than a temporary period of time" and "a permanent and established home" and the definitions range between these two extremes. This being the case, our courts have held that such terms should be given the broadest construction and that all who may be included, by any reasonable construction of such terms, within the coverage of an insurance policy using such terms, should be given its protection.

*Prudential Property* at 177, quoting *Great Am. Ins. Co. v. Allstate Ins. Co.*, 338 S.E.2d 145, 147 (N.C.App.1986). We first note the ambiguity found in *Prudential Property* addresses the terms resident, residence, and residing in the broad context of the phrase "residents of your household" and did not specifically address the narrower phrase "reside with." *Id.* at 176-77. The court's analysis focused on the factual distinctions between temporary presence and a permanent and established home. *Id.* at 177. Whereas, in this case, the issue is not whether appellee temporarily or permanently resided at the residence listed on the insurance policy. The issue is whether appellee "resided with" the named insured at the time of the accident.

{¶ 19} The Ninth District determined that a homeowners' insurance contract providing coverage to "the policyholder and any relatives who *live in* the policyholder's household" did not provide coverage to the policyholders' son who was housesitting their home while the policyholders were on vacation. *Felton v. Nationwide Mut. Fire Ins. Co.*, 163 Ohio App.3d 436, 2005-Ohio-4792, ¶ 20 (9th Dist.). The court reasoned that common sense, reason, and fairness dictate that "living at" the home is quite different than "living in" the home as the policy required. *Id.*

{¶ 20} Similar to *Felton*, the distinction in this case is between "residing with" the named insured at the time of the accident and "residing at" the named insured's former residence at the time of the accident. Here, pursuant to the plain and ordinary meaning of the phrase, appellee did not presently "reside with" his deceased father at the time of

accident. Because appellee's father's death occurred before the accident, it is not possible for appellee to have *presently* dwelled with him at the time of the accident. *See Dohko v. Jablonowski*, Mich.App. No. 306082, 2012 WL 5853754, *6 (Nov. 15, 2012) (agreeing with trial court's statement that "one could not possibly reside with a deceased homeowner"). Therefore, even if we were to apply the "broadest construction" rule of *Prudential Property*, appellee did not "reside with" the named insured at the time of the accident. Contrary to appellee's claim otherwise, the reason why he did not "reside with" the named insured at the time of the accident does not change the analysis. Neither is it relevant that appellee resided with the named insured when the insurance contract was formed. *See, e.g.*, *Kaplysh v. Takieddine*, 35 Ohio St.3d 170, 174 (1988) (finding the only relevant time in an insurance contract dispute was whether the driver was licensed at the time of the accident).

{¶ 21} Next, appellee argues that he ought to be covered by the policy because he was included in the "Rated Driver List" of the prepaid policy, which appellant is now attempting to retroactively void. Implicit in this argument is an assertion by appellee that because he is listed on the "Rated Driver List", he should recover as if he was a named insured on the policy. However, "whether or not one is an 'insured' under a policy is governed by the language of the policy itself and is not controlled by whether or not that person is listed as an additional driver." *Vanvlerah v. Doughty*, 6th Dist. Huron No. H-04-044, 2005-Ohio-3601, ¶ 18; *see also Wetzel v. Auto-Owners Ins. Co.*, 2d Dist. Darke No. 2015-CA-25, 2016-Ohio-5355, ¶ 15 (analyzing the same insurance policy language and finding that the definition of "you" unambiguously includes only named insured drivers and a spouse who resides with the named insured, not scheduled or rated drivers). Moreover, appellee's assertion that appellant retroactively voided the policy pursuant to R.C. 3929.05 is without merit. R.C. 3929.05 precludes an insurance company from cancelling or annulling an insurance agreement after the occurrence of an accident where the cancellation would be

retroactive to a date prior to the accident. Here, as analyzed further below, the named insured's death did not effectively cancel the policy. Rather, the policy continued to provide coverage in a variety of circumstances, which did not include UIM coverage to appellee in this instance. Thus, appellant's denial of UIM coverage pursuant to the limitations of the policy was not a retroactive cancellation.

{¶ 22} Accordingly, based on the plain and ordinary meaning of the language in the policy, appellee was not entitled to UIM coverage.

### B. Uninsured/Underinsured Motorist Coverage Exclusion

{¶ 23} Appellant contends that in addition to appellee's accident falling outside the scope of the plain and ordinary meaning of the language in the policy, appellee is also barred from recovery based upon UIM exclusion g. In contrast, appellee argues that appellant's reliance on the exclusionary provision is improper because appellee did not attempt to "take advantage" of the provision for UIM recovery as an "executor, administrator or beneficiary" because he is entitled to UIM recovery pursuant to the general UIM provisions, as analyzed above.

{¶ 24} This court interprets an exclusion in an insurance policy "as applying only to that which is clearly intended to be excluded." (Citation omitted.) *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 6. "Although the insured bears the initial burden of proof to establish that a policy provides coverage for a particular loss, where an insurer relies on an exclusion to deny coverage, the insurer has the burden of proving the applicability of the exclusion." *Will Repair, Inc. v. Grange Ins. Co.*, 8th Dist. Cuyahoga No. 100717, 2014-Ohio-2775, ¶ 21; *see also Continental Ins. Co. v. Louis Marx & Co., Inc.*, 64 Ohio St.2d 399, 401 (1980).

{¶ 25} Here, the language in exclusion g of the policy is clear. It simply states that UIM coverage does not apply to any beneficiary of a named insured *unless* the beneficiary is

operating or occupying an automobile for which UIM coverage is provided by the policy. Appellee is a beneficiary of the name insured; therefore, based on the unambiguous language of the exclusion, appellee would not be entitled to UIM coverage *unless* he was operating or occupying an automobile for which UIM coverage is provided by the policy. There were two such automobiles covered under the policy, and appellee was not operating or occupying either vehicle at the time of the accident. Thus, the exclusion applies and appellee is not entitled to UIM coverage. Appellee's argument that he must attempt to "take advantage" of an exclusion for it to be relevant is misguided. The exclusion is not another avenue of UIM coverage for appellee to pursue. Rather, it is an express limitation providing appellant circumstances for which to deny UIM coverage. *See Continental* at 401 (stating the insurer must affirmatively establish an exclusion to deny coverage on the basis of the exclusion's terms).

{¶ 26} Accordingly, exclusion g applies and appellee is not entitled to UIM coverage.

## C. Illusory Insurance Policy

{¶ 27} Appellee contends that if appellant is entitled to deny UIM coverage for the foregoing reasons, then the policy is rendered illusory because the policy's coverage period had yet to reach its end at the time of the accident. On the other hand, appellant argues that the policy is not illusory because it provided coverage pursuant to its express terms in a variety of circumstances. Appellant further argues that because appellee's accident did not entitle him to UIM coverage does not negate the fact that the policy did continue to provide coverage. In support of this argument, appellant cites an assignment clause under Section VI of the policy. The assignment clause states an interest in the policy may not be assigned without appellant's written consent, as well as provides that "if **you** should die within the policy term," coverage will be provided "as though named in the Declarations" to the named insured's spouse, the named insured's legal representative for the maintenance of the

covered automobiles, and any person in proper temporary custody of a covered automobile until a legal representative is appointed.

{¶ 28} "'[A] contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory.'" *Smith v. GuideOne Ins.*, 10th Dist. Franklin No. 02AP-1096, 2003-Ohio-4823, ¶ 36, quoting *Century 21 Am. Landmark, Inc. v. McIntyre*, 68 Ohio App.2d 126, 129-30 (1st Dist.1980). If a provision renders the policy illusory, then the provision is unenforceable. *See Will Repair*, 2014-Ohio-2775 at ¶ 25. However, where there is some benefit to an insured through an insurance policy, it is not illusory. *World Harvest Church v. Grange Mut. Cas. Co.*, 10th Dist. Franklin No. 13AP-290, 2013-Ohio-5707, ¶ 53, *reversed on other grounds by World Harvest Church*, Slip Opinion No. 2016-Ohio-2913 at ¶ 43. "Courts are not inclined to give insurance provisions a meaning that would render them illusory." *Beaverdam Contracting v. Erie Ins. Co.*, 3d Dist. Allen No. 1-08-17, 2008-Ohio-4953, ¶ 49.

{¶ 29} Although appellee was not covered under the UIM provisions of the policy based on the policy's terms and was also excluded from coverage pursuant to exclusion g, some benefit was nonetheless evident from the face of the insurance policy. As appellant asserts, the assignment clause clearly includes circumstances for coverage following the death of the named insured. Moreover, the general UIM provisions continue to provide coverage to a named insured's surviving spouse, and any relatives, as defined, that resided with the named insured or his or her spouse at their residence. Also, the exclusion would have been inapplicable had appellee been operating or occupying a covered automobile. Consequently, despite the fact that the circumstances in this case do not provide UIM coverage to appellee, because the policy provides some benefit, we do not find that the policy is illusory. *See, e.g.*, *GuideOne* at ¶ 36-39; *State Auto Ins. Co. v. Golden*, 125 Ohio

App.3d 674, 678 (8th Dist.1998); *Estate of Michael Izold v. Suburban Power Piping Corp.*, 8th Dist. Cuyahoga No. 70873, 1997 WL 127197, *4 (Mar. 20, 1997) (finding coverage was not illusory where some benefit to the insured was evident from the contract).

{¶ 30} Accordingly, for the foregoing reasons, appellant's assignment of error is sustained. The judgment of the trial court denying in part appellant's motion for summary judgment is reversed and summary judgment is rendered for appellant.

M. POWELL, J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 31} I respectfully dissent because the trial court was correct in its analysis and properly denied Home-Owners' motion for summary judgment. The insured, Glenn Collins, had contracted with Home-Owners for insurance which began at 12:01 a.m. on July 2, 2013, and ended at 12:01 a.m. on January 22, 2014. The insured intentionally contracted for the insurance coverage to benefit his adult son living with him at his residence of 4868 Union Road, Franklin, Ohio. Accordingly, the insured's adult son, Jonathan Collins, was covered at the time he was involved in an automobile accident on October 23, 2013.

## INTENDED EFFECT

{¶ 32} An insurance policy is a contract, and the relationship between the insurer and the insured is purely contractual in nature. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 9. "The fundamental goal when interpreting an insurance policy is to ascertain the intent of the parties from a reading of the policy in its entirety and to settle upon a reasonable interpretation of any disputed terms in a manner designed to give the contract its intended effect." *Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St.3d 234, 2015-Ohio-

3308, ¶ 8, citing *Burris v. Grange Mut Cos.*, 46 Ohio St.3d 84, 89 (1989). "Words and phrases must be given their plain and ordinary meaning 'unless manifest absurdity results, or unless some other meaning is *clearly* evidenced from the face or overall contents of the instrument.'" (Emphasis added.) *Laboy* at ¶ 8, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶ 33} In examining the reasonable interpretation of disputed terms and determining the intention of the parties, we are mindful Home-Owners possesses an expertise in drafting insurance contracts so that the insured will know with certainty the benefits for which he has bargained. A "meeting of the minds" upon the terms is essential for any contract and provisions which are capable of more than one meaning must be construed strictly against the insurer and liberally in favor of the insured. "This is particularly true when considering provisions that purport to limit or qualify coverage under the policy." *Westfield Ins. Co. v. Hunter,* 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 11. If the language used is open to different interpretations the policy will be interpreted favorably for the insured. *Galatis.*

{¶ 34} Jonathan was not only a "relative" for whom coverage was provided, he was expressly written into the policy as a "listed driver." Without clear language or an exclusion to the contrary, it appears Jonathan was at all relevant times an *intended* third-party beneficiary entitled to notice prior to any cancellation of the policy. *See Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083. As such, the policy's language should still be strictly construed against the insurance company according to general contract law.[3]

{¶ 35} Conversely, other courts have applied the liberal construction of insurance policies to intended third-party beneficiaries. For example, the Ninth District denied an insurance company's argument that the language of the insurance policy should not be

---

3. An intended third-party beneficiary to a contract has enforceable rights even though it is not a party to the making of the contract. *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).

construed strictly against it because the claimant was a third party. *Darno v. Westfield Ins. Co.,* 9th Dist. Summit No. 27546, 2015-Ohio-2619, ¶ 16, jurisdiction denied *Darno v. Davidson*, 144 Ohio St.3d 1441, 2015-Ohio-5468. The court determined that while the plaintiff "was not a named party to the insurance policy between his father and Westfield, he certainly was an intended third-party beneficiary, as evidenced by the policy's extension of coverage to 'family members.'" *Id.* at ¶ 16. As such, the court construed the language strictly against the insurance company.

{¶ 36} In considering that absurd results are to be avoided and that disputed phrases are to be construed favorably for the insured, we look to the contract as a whole, using a plain and ordinary reading of the insurance policy, in an effort to determine the exact intent or understanding.

## CONTRACT AS A WHOLE

{¶ 37} The contract informs the insured that Glenn's son, Jonathan, who was residing with him, is covered as a "listed driver." The trial court reasonably interpreted the contract to provide insurance for Glenn and Jonathan, provided Jonathan continued to live at his father's address. In other words, as long as Jonathan did not move away from his father's residence he had insurance coverage. Nothing in the contract notifies the insured that a listed driver, for whom insurance coverage was specifically purchased, retroactively would be canceled due to the death of the insured. The trial court found this to be an absurd result produced by an unintended interpretation of the disputed phraseology. Exercising a de novo review, I must agree.

## DEFINITIONS

{¶ 38} Section 1 defines terms for the insured at the time he is contracting with Home-Owners. Definitions in and of themselves are not exclusions. Definitions only define the terms of the coverage about to be discussed in the policy. Definitions are not meant to

magically erase coverage and most certainly not upon future events not mentioned. Home-Owners limits the ordinary use of "relatives" and narrows that group to only those "relatives" actually living where the insured lives – under his roof. This is the sole purpose or meaning in Home-Owners defining "relative." The policy then uses the defined terms to later discuss the provisions that articulate the coverage being provided, including the applicable exclusions to that coverage.

{¶ 39} At the time the insured is contracting, the only reasonable interpretation of "resides with" is that the relative of the insured shares the same address. The insured is informed that any relative "who resides with you and who is related to you by blood * * * " is also included in the coverage. At the time of the accident, the insured had been deceased for two months, yet neither father nor son had changed their address. The trial court specifically found that Jonathan "was still a resident of Glenn's home." This is not an unreasonable interpretation. Only an after-the-fact interpretation permits Home-Owners' argument that the defined term "relative" means the insured's death operates as a post mortem, unwritten exclusion of coverage for Jonathan.

{¶ 40} When looking at the contract as a whole, it is obvious that the definition section was only meant to limit which relatives were insured; being only relatives sharing residency with the insured. Nothing triggers the contemplation of the insured's death with a plain reading of Home-Owners' definition of "relative."

{¶ 41} During oral arguments, Home-Owners suggested it was not actually "death" that operated to deny coverage, it was the location of Glenn's body. If the insured dies and later that same day the "relative" has an accident, Home-Owners does not deny coverage would exist. Yet if the deceased is later removed from the residence, Home-Owners' argument is that the "relative" no longer resides with the insured. Home-Owners' argument

creates an impossibility since a relative cannot reside with a deceased person.[4] Yet Jonathan did not move from Glenn's address listed in the policy – their residence shared together. Manifest absurdity results from Home-Owners' interpretation of the intended effect of "relative."

**{¶ 42}** Phrases used in an insurance policy are to be given their plain and ordinary meaning unless there is some wording indicating a contrary intention. *Cincinnati Ins. Co. v. Ohio Mut. Ins. Co.*, 12th Dist. Butler No. CA2013-06-101, 2014-Ohio-168. The trial court's plain and ordinary reading of the definition "relative" determined that the provision was meant to include those relatives residing where the insured resides and that any other interpretation would lend to absurd results. I also do not "read" the purpose behind "relative" that Home-Owners suggests, thus at the very least I find the phraseology ambiguous.

**{¶ 43}** "Numerous courts in Ohio have concluded that the word 'reside' is ambiguous." *Hicks v. Mennonite Mut. Ins. Co.*, 2d Dist. Miami No. 10-CA-17, 2011-Ohio-499, ¶ 43, citing *Prudential Prop. & Cas. Ins. Co. v. Koby*, 124 Ohio App.3d 174 (11th Dist.1997). Any ambiguity in an insurance contract must be interpreted against the insurer and in favor of the insured unless another meaning is *clearly* expressed within the contents of the policy. *Safe Auto Ins. Co. v. Semenov*, 192 Ohio App.3d 37, 2011-Ohio-163, ¶ 9 (12th Dist.). Unfortunately for Home-Owners, the contract does not clarify matters elsewhere.

## EXCLUSIONS

**{¶ 44}** The exclusions informed the insured of situations where coverage was not applicable or where coverage was applicable but became inapplicable due to specific circumstances. These exclusions specifically contemplate situations where a once-covered

---

4. Impossibility can excuse performance in a contract if an event was not foreseeable. Since there was no mention or consideration of Glenn's death in the definition of "relative," this is likely what counsel for appellant was referencing when referring to the contract as illusory. *See Western Reserve Academy v. Franklin*, 5th Dist. Stark No. 2012CA00207, 2013-Ohio-4449 ¶ 26; *Lehigh Gas-Ohio, L.L.C. v. Cincy Oil Queen City, L.L.C.*, 1st Dist. Hamilton No. C-150572, 2016-Ohio-4611.

person, such as Jonathan, will subsequently be denied coverage. For example, a person previously covered who subsequently has his or her driver's license suspended, or, a covered person who later settles without Home-Owners' written consent, loses coverage. There is no exclusion for a covered person, like Jonathan, who subsequently has a co-inhabitant pass away.[5]

**{¶ 45}** The exclusions *do* contemplate the insured's death indicating that an executor, administrator, and others are not covered unless occupying an automobile listed in the insured's policy. There is no mention of a listed driver or a previously defined "relative" not being covered upon the death of the primary insured.[6] When considering *what* Home-Owners specifically included in its exclusions, and *what* it chose to leave out, the rules of construction do not favor Home-Owners' interpretation that "resides with" was meant to exclude coverage upon Glenn being dead and buried. Language in an insurance policy will be interpreted as applying only to that which the parties *clearly* intended to be excluded. (Emphasis sic.) *Hunter*, 2011-Ohio-1818. "Clearly" was emphasized by the court.

**NOTICE PROVISIONS**

**{¶ 44}** The contract has several provisions contemplating changes with coverage being extended for a limited time so that adjustments can be made. The insurance coverage continues for a limited time even though a different car, other than the one listed in the policy, has been acquired. Elsewhere, Home-Owners agrees to give 30 days' notice prior to cancellation of the policy if for reasons other than nonpayment of the premium. Nowhere is

---

5. While the majority discusses Jonathan not being covered because of Exclusion g and his not driving a listed car, I would find that Exclusion g is not applicable because Jonathan is a "relative" covered by the policy. The exclusion specific to Jonathan driving an insured car (which was not an argument espoused by Jonathan) is, therefore, immaterial and would not deny coverage to a "relative."

6. Home-Owners easily could have drafted an exclusion to give notice to the insured as well as Jonathan as a specifically "listed driver," that coverage stopped upon the insured's death for previously defined "relatives"…it chose not to do so. When asked at argument why such an easy clarification was not made, it was suggested that (1) it was unnecessary, and (2) others drafted the policy. The mere fact that other courts have struggled with the intent behind "resides" as well as this litigation, seems to suggest the need for more certain language.

the insured informed that his death and subsequent burial will operate to change his residency resulting in an immediate cancellation of the insurance he procured for his adult son living with him. Nothing informs Glenn, the insured, that his involuntary act of dying and being removed from the residence would invalidate the insurance he specifically intended for Jonathan.

{¶ 45} Home-Owners suggests its interpretation is not furtive because it was the intention all along to cancel Jonathan's insurance coverage with no grace period or notice whatsoever. In light of the entirety of the contract, I find this intention a difficult position to consider reasonable, particularly for such a highly regarded, customer-oriented company. Equally significant, it would be a further absurdity to find the insured's intent was to leave the son living with him completely exposed to his detriment with no notice whatsoever.

## CONCLUSION

{¶ 46} "[W]here the written contract is standardized and between the parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the non-drafting party." *Galatis*, 2003-Ohio-5849 at ¶ 13. To comprehend the ambiguity discussed herein, one must not debate isolated verbiage or ascertain the meaning he or she thinks is best attributed the definition "relative," but rather must read the policy in its entirety through the eyes of the insured. Only then can one appreciate the lack of clarity, and thus the ambiguous nature, found in the contract.

{¶ 47} The absence of clear language necessary for Home-Owner's interpretation clearly places more than one reasonable interpretation before the court. This leaves the meaning of "relative" open to different interpretations. The law of contracts requires disputed meanings to be interpreted favorably for the insured. Thus, respectfully, I find the majority analysis misguided and must dissent from its judgment.